IN THE
UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
(Central Islip)

FILED
U.S. DISTRICT COURT E.D.N.Y.
★ MAR 17 2014 ★
LONG ISLAND OFFICE

| | | |
|---|---|---|
| BRIAN SULLIVAN, | : | |
| Movant-Petitioner | : | |
| | : | |
| V. | : | Civil Action No. _____ |
| | : | |
| UNITED STATES OF AMERICA | : | |
| Plaintiff-Respondent | : | CV 14 1777 |
| | : | SEYBERT, J |

MEMORANDUM OF LAW
IN SUPPORT OF MOVANT'S MOTION TO VACATE,
SET-ASIDE, AND/OR CORRECT
HIS UNLAWFUL SENTENCE

NOW COMES Movant-Petitioner, Brian Sullivan ("Sullivan"), through pro se legal assistance, filing a Motion to Vacate, Set-Aside, and/or Correct his unlawful sentence per the dictates of Title 28 of the United States Code § 2255(a). In support, the following is submitted in good faith that the contents are factually true:

## I. Jurisdiction

This Court has "subject matter jurisdiction" pursuant to Title 28 of the United States Code §2255(a) and/or the "All Writs Act" under Title 28 U.S.C. §1651.

The Movant, Sullivan, has one (1) year to file his §2255(a) writ of habeas corpus application and memorandum of law in support after his conviction becomes final. The Movant's direct appeal was recently denied his Direct Appeal Review on June 21, 2013 with the mandate issuing on August 12, 2013. Thus, this writ is timely filed.

## II. Brief Procedural History

On February 10, 2011, Movant Sullivan was arrested for a multiple §846 Drug conspiracy Count Indictment in violation of §841(a)(1)(b)(1)(B)(vii) and Title 21 U.S.C. §§963, 960(a), and 906(b)(3); See Dkt. Sheet Doc #7. CJA Counsel was appointed. Doc. #10.

Several pre-trial motions were filed by defense counsel and the Government. An Indictment was issued against Movant. **Doc. #26.** Arraignment was set and more pre-trial proceedings continued. **Id.** Superseding Indictments would follow. **Doc. #46.**

An order was issued permitting Movant and his co-defendants to have two (2) hours per week in the library to listen to wire-tap recordings. **Doc. #110.** More pre-trial proceedings were conducted and several pre-trail motions were filed for Movant by counsel. **ID.**

On July 7, 2011, movant changed his plea of "Not Guilty" to a plea of "Guilty" on count 1. **Doc. #s 125-147.** Several additional pre-trial motions for Movant to continue his Sentencing hearing proceedings. **Doc. #180.**

Movant was sentenced on May 5, 2012. **Doc #245.** He was sentenced to a term of Twenty Seven (27) months to be served in the BOP followed by Four (4) years of supervised release. **Id.** A Notice of Appeal was filed. **Doc. 249.**

On June 21, 2013, after Appellate Counsel filed a sworn affidavit and Anders brief to the Second Circuit Court of Appeals, the direct appeal was denied and the conviction affirmed. **See COA No. 12-2221 Court of Appeals, 2nd Circuit.**

And now, Movant submits his §2255(a) writ of habeas corpus requesting a Motion to Vacate, Set-Aside, and/or Correct his unlawful sentence.

### III. CLAIMS PRESENTED

#### Claim I:

Counsel provided Ineffective Assistance and Representation of Counsel per the Sixth Amendment to the Constitution of the United States, whereas he failed to investigate and file a Suppression hearing motion based on wire-taps that presented pellucid false and intentional non-truths.

Claim II:

The Government's Counsel committed suborned perjury when it permitted its chief witness, through implied impunity, to submit false affidavits that would compel Movant to plead guilty. Had Movant known that the Government's attorney was presenting falsified documents concerning wire-taps he would have persisted on going to trial instead of pleading guilty.

Claim III:

The Government's counsel withheld Movant's Title 18 U.S.C. §3500 "Jinks Act" material, ultimately refusing to turn over the Brady material that would have supported Movant's defense or, if nothing else, would have given Movant more Plea Bargaining power to resolve this case in a manner consistent with the best interest of Movant's liberty that was at stake.

************************
## CLAIM I.

The Sixth Amendment to the Constitution of the United States provides,

in part, that "all defendants shall be given a fundamentally fair trial

process , and have effective representation of counsel". **See 6th Amend.**

U.S. Const.

In U.S. v. Pitcher, 559 F.3d 120 (2nd Cir. 2008), the Second Circuit

held that:

> "The Sixth Amendment right to effective counsel attaches at all "critical
> stages" of the case following the formal initiation of the adversarial
> judicial proceedings. It is well settled that a defendant's Sixth
> Amendment right to counsel extends to plea negotiations".

In Powell v. Alabama, 287 US 45 (1932) The United States Supreme Court held:

> "Even the intelligent and educated layman has small and sometimes no
> skill in the actions of the law. If charged with a crime, he is
> incapable, generally, of determining for himself whether the indictment
> is good or bad. He is unfamiliar with the rules of evidence. Left
> without the aid of counsel, he may be put on trial without a proper
> charge, and convicted upon incompetent evidence or evidence irrelevant
> to the issue or otherwise inadmissible. He lacks both the skill and
> knowledge adequately to prepare his defense, even though he have a
> perfect one. He requires the guiding hand of counsel at every step
> in the proceedings against him. Without it, though he be not guilty,
> he faces the danger of conviction because he does not know how to
> establish his innocence. If that be true of men of intelligence, how
> much more true is it of the ignorant and illiterate, or those of feeble
> intellect".

And, in <u>Hutto v. Davis</u>, 70 L.Ed2d 335 (1982), the United States Supreme Court held that:

> "Unless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts, no matter how misguided the judges of those courts may think it to be".

Thus, a claim of ineffective assistance of counsel challenging a guilty plea is assessed under the two-prong standard first articulated in **Strickland v. Washington**, 466 US 668 (1984), and further construed by **Hill v. Lockhart**, 474 US 52 (1985).

In dealing with Claim I, Sullivan states that the Nassau County District Attorney's office of Kathleen M. Rice, ADA Joseph Dompkowski, ADA Rick Whelen, Detective Angelo Lamorte of the Nassau County Police Department, and all state agents involved in the wire-tapping of Criminal Case No. 10-CR-991 (S-I) (JS), filed in this Court perjurious affirmation of felony acts of perjury. See Ex A. Sullivan's Complaint.

Nevertheless, we must first deal with the invalidness of the plea that was made in this case, because there was a plea waiver concerning Movant's direct appeal and collateral review process, a non-pending guilty defendant generally can undertake. [1]

---

1. Mr. Sullivan, through misadvice, waived his Constitutional rights at the Plea "Allocution" hearing and, ultimately, at the Sentencing hearing to file a Direct Appeal and Collateral Review. **See Plea Allocution Colloquy Doc. #125 @ pp. 7-11; See Sent. Trans. Doc. #245 @ p.4.** Movant states that he accepted a plea without being explained the law in respect to essential elements of the offense and a "factual basis". Moreover, he never knew about the newly discovered information concerning the wire-taps that will be revealed below. But for the misadvice of counsel, Movant would have persisted in going to trial.

## A. The Plea Process in this Case is Constitutionally Invalid , and Was Not Made Intelligently, Knowingly, or Voluntarily Due to Misrepresentation and Inept Lawyering for Movant:

The Sixth Circuit Court of Appeals gave insight towards ineffective assistance of counsel in **Ballard v. US**, 400 F.3d @ 411, holding that:

"Our Court is charged with ensuring equal justice under the law for all who come within the walls of our judicial system. If we turn a blind eye to the inequities that result from ineffective legal representation, we jeopardize the integrity of justice itself".

Federal Rule of Criminal Procedure 11(b)(3) provides in pertinent part:

"Before entering a guilty plea, the Court must determine that there is a factual basis for the plea". ID.

In the case <u>sub judice</u>, in examining the plea agreement, **Doc. #125**, the Sentencing Transcript, **Doc. #245**, and the Plea Allocution Colloquy at the Change of Plea hearing, **Doc. #125**, clearly there is no "factual basis" portion evidencing the requirement of Fed. R. Crim. Pro. Rule 11(b)(3).[2]

In <u>Carr</u>, 271 F.3d 172 (4th Cir. 2001), the Fourth Circuit Court held:

> Because Carr's Rule 11(f) plea proceeding on Count One was deficient in this single context, we must also determine what relief, if any, Carr is to receive. Several alternatives are possible, such as either vacating the acceptance of his guilty plea to Count One or vacating his judgment of conviction on that count. While we have not previously had occasion to directly address this specific question, a thorough analysis of the issue was performed by the Sixth Circuit in *United States v. Tunning*, 69 F.3d 107 (6th Cir. 1995). Under the "two-remedy rule" adopted by that court, when
>
> > the error [of the plea hearing] involves a problem with the district court's state of mind, for example . . . the record does not include sufficient information from which the district court could find a factual basis for the guilty plea, the appropriate remedy is to remand to the district court for further proceedings to create the appropriate record. *Id.* at 115. On the other hand, if "the error involves the defendant's state of mind, such as when the . . . court failed to determine that the defendant was competent . . . the appropriate remedy is to vacate the plea and remand so that the defendant can plead anew." *Id.* Since *Tunning* involved the district court's state of mind, that court vacated Tunning's conviction and remanded for further proceedings. This two-tiered approach, distinguishing between the court's state of mind and the defendant's state of mind, was first enunciated by the Third Circuit in *United States v. Allen*, 804 F.2d 244 (3d Cir. 1986) (remanding for further hearings on **factual basis for plea** when district court may have accepted plea based on erroneous assumption).
>
> We, like the Sixth Circuit, see the two-remedy rule developed in *Allen* as "an appropriate analytical tool" in determining the proper remedy for a Rule 11 violation. *United States v. Goldberg*, 862 F.2d 101, 108 n.4 (6th Cir. 1988). A Rule 11 record that fails to reflect that the defendant voluntarily and knowingly entered a guilty plea requires a different cure than a record that *does* demonstrate the requisite knowledge by the defendant, but fails to sufficiently reflect the district court's basis for accepting the plea. When the record is deficient as to the defendant's state of mind -- and this deficiency affects the defendant's substantial rights -- the defendant {271 F.3d 181} may be entitled to plead anew. 8 Where, as in this case, the sole defect in the Rule 11 record is the lack of a sufficient factual basis for the judgment of conviction, however, the proper remedy is to vacate the conviction and remand. *Tunning*, 69 F.3d at 115; *accord United States v. Kelswetter*, 860 F.2d 992, 997-98 (10th Cir. 1988) (remanding in part for written findings on factual basis to be certified to appeals court as supplement to record on appeal); *see also United States v. Hourihan*, 936 F.2d 508 (11th Cir. 1991) (allowing defendant to enter new plea when defendant was not correctly advised of minimum mandatory sentence); *United States v. Parra-Ibanez*, 936 F.2d 588, 598 (1st Cir. 1991) (declining to vacate plea and remanding for evidentiary hearing when it could not be determined whether error was harmless on existing record); *Montgomery v. United States*, 853 F.2d 83 (2d Cir. 1988) (reversing and remanding when defendant did not admit acts constituting illegal conspiracy).

___

2. Doc #125 states "the Court finds a factual basis for the plea and accepts it". However, the record should be established as required by Rule 11.

This situation involves the lack of a sufficient factual basis for Carr's guilty plea, a scenario involving, as in *Tunning*, "the district court's state of mind." 69 F.3d at 115. As we have noted, the court in that case vacated Tunning's conviction and remanded for further Rule 11 proceedings. We are content to adopt and apply the two-remedy rule explained in *Tunning*, and in so doing we must vacate Carr's conviction as to Count One and remand for further Rule 11 proceedings on that count. We will not, however, vacate Carr's guilty plea to that count or disturb the plea agreement between Carr and the Government. If, in further Rule 11 proceedings, the Government can establish a sufficient factual basis for the interstate commerce prong of § 844(I), the district court may reinstate Carr's judgment of conviction on Count One. *See United States v. Johnson*, 246 F.3d 749, 752 (5th Cir. 2001) (vacating guilty plea and remanding for further proceedings on, inter alia, whether factual basis of guilty plea was sufficient on interstate commerce element); *United States v. Rea*, 223 F.3d 741, 744 (8th Cir. 2000) (reversing conviction and remanding for determination of whether church annex had

sufficient connection to commerce), conviction reinstated at 2001 WL 407238 (D. Minn.).

When turning back the record, this District Court stated that:

> "THE COURT: All right. And once again, Mr. Sullivan, you've heard the prosecutor now outline the elements of the crime with which you're charged and to which you have represented that you intend to plead guilty".
>     Do you understand those elements?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And have you had an opportunity to speak to your attorney about them?
>
> THE DEFENDANT: Yes
>
> Doc. #125 @ PP 11-12

It should be noted that nowhere in the preamble of this Plea Allocution document does the Government's counsel state on record about the "elements of the offense" or mention that there is a "factual basis" for the change of plea made by Movant. The only reference made was by the Court as follows about the plea agreement:

> "THE COURT: I have also been handed up a plea agreement which is now marked as Court Exhibit 1." ID @ p. 9.

AUSA Capwell is only asked a reference about the plea by the Court as follows:

> THE COURT: Ms. Capwell, I will ask you now if you would please on behalf of the Government to list whether there is any waiver of appeal or other waiver of rights included in this plea agreement. ID @ p. 9.

The response is irrelevant because, in looking at the cotillion of the plea agreement averment, it states an element of the offenses charged, but once again, the record is devoid of a "Factual Basis" for the change of plea which the Government could prove if the case were taken to trial. See Ex. D Plea Agreement and Ex. B Change of Plea Trans. @ p. 19, lines 9-15.

Simply put, this case must be vacated where there was no factual basis for the change of plea that was sufficient to suffice the conspiracy elements of §§846 and 841(a)(1)(b)(1)(D).

**B. Because the District Court Misadvised Sullivan that he was Giving Up His Right Against Self-Incrimination, Nothing Sullivan Said at the Sentencing Hearing Can be Used as Support for the Factual Basis for the Plea and, Because of this Constitutional Violation, the Plea Agreement is Null and Void as a Matter of Law.**

The United States Supreme Court announced in **Mitchell v. US**, 526 US 314 (1999) that:

> "Guilty plea case held not to be waiver of right to invoke privileges against self-incrimination in sentencing phase; also drawing sentence of adverse inference from accused's failure to testify held to violate Fifth Amendment".

The high Court further held in Mitchell that:

> "In the federal criminal system, an accused does not waive his right to invoke the Federal Constitution's Fifth Amendment privilege against self-incrimination at a sentencing hearing by entering a plea of guilty, as (1) the accused's testimony under oath in in a plea colloquy does not waive his right to invoke the privilege against self-incrimination, (2) Rule 11 of the Federal Rules of Criminal Procedure does not prevent the accused from relying upon the privilege at sentencing, and (3) under the Fifth Amendment, a sentencing hearing is part of a criminal case and incrimination is not complete until a sentence has been fixed and a judgement of conviction has been finished".  ID.

The Court also held that:

> "In a federal criminal case, the purpose of a plea colloquy is, where a defendant has pleaded guilty, to prevent the defendant from an unintelligent or involuntary plea".  ID.

At the plea hearing, the District Court misadvised Sullivan as Fed. R. Crim. Pro. Rule 11(b)(1) requires.

The Court clearly advises the Movant on record that:

> "THE COURT: At trial, while you would have the right to testify if you chose to, you would not be required to testify under the Constitution of the United States, you cannot be compelled to incriminate yourself. If you decide not to testify, the Court would instruct the jury not to hold that against you. Doc. #125 @ p. 7.

Then, the District Court comes right back on the record that:

> "THE COURT: If you plead guilty, I'll have to ask you questions about what you did in order to satisfy myself that you are guilty of the charges to which you seek to plead guilty. And you will have to answer my questions and acknowledge your guilt. Therefore, you will be giving up your right not to incriminate yourself".
> ID @ p. 8.

This caused an irrevocable and impermissible Constitutional domino effect making Movant self-incriminate himself about past, unindicted crimes detached from the instant offense, to the point that encroached upon his Fifth Amendment right against self-incrimination. See **Mitchell, Supra.** This Constitutional divide was abridged in the fact that neither the Plea Agreement nor the plea "Allocution" Colloquy Hearing and Sentencing Transcripts contain a "factual basis" for a plea of guilty in this alleged conspiracy case, or that the Government could have proved its case or met its burden of proof had this case gone to trial before a jury.

Even when the Movant incriminated himself, he never agreed he was involved in a §846 conspiracy at sentencing. On the record, the movant was frank about his incriminating actions, but at the Change of Plea hearing he was asked a few questions by the District Court as follows:

> "THE COURT: Mr. Sullivan, I am going to need you no please, if you would, to tell me in your own words what you did in connection with the acts that are charged in Count 1 of the Superseding Indictment.
>
> THE DEFENDANT: I had an agreement with others to conspire to distribute marijuana, pretty much specifically in Suffolk County.
>
> THE COURT: And was that time frame in 2010 when this occurred?
>
> THE DEFENDANT: Correct.
>
> THE COURT: Did you enter into this agreement freely with the others involved?
>
> THE DEFENDANT: Correct.

> THE COURT: And at the time you entered into this agreement, conspiring to distribute and possess marijuana, did you know you you were breaking the law?
>
> THE DEFENDANT: Yes. **Plea Colloquy @ pp. 16-17.**

For the record, Movant states he was only parroting what his lawyer instructed him to say, to attempt to satisfy acceptance of his change of plea. The sentencing transcript, however, entails a different nature of criminal involvement by the Movant in this case. A conversation took place between the District Court and the Defendant as follows:

> THE COURT: . . . Mr. Sullivan, I look forward to the amount of knowledge with respect to marijuana.
>
> You made a lot of calls, a lot of representations and you were in the thick of things, if you will. Explain to me why you think this does not warrent the recommended sentence of the Probation Department. **ID @ p. 20.**

Movant begins to speak as follows:

> THE DEFENDANT: Your Honor, if you have a minute. I know you are busy.
>
> THE COURT: I have a minute. I'm a very patient woman, Mr. Sullivan.
>
> THE DEFENDANT: The first thing I want to address, which bothers me the most, the domestic violence 17 years ago.
>
> THE COURT: That bothers me too.[3]
>
> THE DEFENDANT: I understand. If anybody it would bother, it bothers my child's mother, I talk to her still, to this day, twice a week on the phone.
>
> THE COURT: To your child or the child's mother?
>
> THE DEFENDANT: This is my child's mother.
>
> THE COURT: All right.

---

3. This had nothing to do with the instant offense and being that the prior conviction was Seventeen (17) years old, it should not have had any bearing or influence on the District Court's decision to punish Movant when it came to the 18 U.S.C. §3553 Factors. Clearly, it influenced the punishment in this case, which was an unlawful prejudice to Movant.

THE DEFENDANT: I got involved in a relationship. I think I was 20 years old at the time. And I was with a younger lady whose mother had seven separate orders of protection out. These were against her kids. She used to have my daughters arrested. A lot of it was just "tits for tats".

THE COURT: Tits for tats. There's an allegation in this probation report that you held her hostage and beat her for days.[4]

THE DEFENDANT: Your Honor, I never held her hostage, never beat her for days. In 1997 I went to trial for another complaint she made. I finally stopped pleading guilty to this in front of Michael Mullen, and she used it as a sword, not a shield.

THE COURT: You served a year in jail?

THE DEFENDANT: I took a plea of guilty that made it concurrent with the prior case, but it's not as it's written out to be, that I held her and beat her. She's a woman. To this day, when I was out on parole, we went out to dinner. I don't put my hands on her. We're very cordial to my daughter. She has a boyfriend that I speak to.

THE COURT: She certainly didn't call the Probation Department when she asked her to call?" **Sent. Trans. @ pp. 20-23.**

This was irrelevant and unnecessary discussion that went on about this prior domestic violence case. Then, the Court reiterated another question about the wire-taps after Movant made the following statement:

"Honestly, Your Honor. I moved about ten pounds. I understand people made money. I made about $100 per pound. It is pathetic.

THE COURT: Do you want me to get those tapes, and you will listen to the statements you made with Mr. Curatola?

THE DEFENDANT: Honestly, you're right. I'm wrong - -

THE COURT: It is not a question of may, at this point in time, Mr. Danielo says that he heard on the tapes you telling Mr. Curatola, a known felon who you were dealing drugs with, maybe only 10-20 pounds of marijuana. You told him, this is how you can get away with it on probation. This is how you can act. Like you get a job. Whatever it was.

And I'll be happy to listen to it. But you are on Supervised Release. You are technically still in a halfway house. And guess what you are doing? You are calling your buddies and dealing drugs. Whether it was 10 pounds, 200 pounds.

THE DEFENDANT: Right.

---

4. Counsel was obligated under Fed. R. Crim. P. Rule 32(j) and USSG §6A1.1-3 to file an objection to this information in the PSIR because it defames Movants character and so it would not have a residual effect on the Court. See **Sellers v. BOP**, 959 F.2d 307, (DC Cir 1992)

THE COURT: - - There's nothing that sends off an alarm that says to me you would have stopped at 20 or 100.

It was a question of opportunity, and there were a lot more pounds going through the operation with Curatola and David up in Canada.

THE DEFENDANT: I understand, your Honor. Trust me. I have a clear vision . . . .

But I do realize normal people struggle and make ends meet. That's what I'm trying to do, so when I get out, I have a system. I don't have to rely on trying to get a pound and sell it." ID @ pp. 23-24.

The Court asked the Government to weigh in on the subject, with the following question:

THE COURT: Thank you, sir. Anything the Government would like to ask?

MR. CANTY: I think your Honor made all the points that the Government would have made on the record, so we'll rely on the record previously made. ID @ p. 25.

Movant lastly stated on the record that:

"I don't want to be some 47 year old pot dealer, pathetic. I want to try and get a title, at least something, so she can, my father has a title. He's something." ID.

Despite all the multiple instances of self-incriminating statements made without any interruption of defense counsel to caution his client that he had a pending Supervised Release Violation case open, and such statements could affect that hearing. But the District Court realized this as follows:

THE COURT: Mr. Sullivan, it's more than a mistake. You let your family down. Judge Platt will deal with your violation next door. ID.

Bottomline, Movant should not have been discussing anything that dealt with his alleged involvement in this case because of his pending Supervised Release violation case. Moreover, if there was a "factual basis" for the plea incorporated into the Plea Agreement averment, the deal agreed upon, itself, would have been enough to satisfy Rule 11 acceptance by the Court, and shielded Movant from the prejudices above, and he would not have been

compelled to erroneously waive his Fifth Amendment right against self-
incrimination at the Plea Agreement proceedings or the Sentencing proceeding.
Undoubtedly, the proceedings had a residual effect on his Supervised Release
violation hearing.

The Sixth Circuit Court of Appeals made clear that equal justice
requires effective assistance of counsel in its **Ballard** decision. **Supra.**
In **Kimmelman v. Morrison**, 477 US 365 (1986), the United States Supreme Court
held that:

> The right to counsel is a fundamental right of a criminal defendant.
> It assures the fairness, and thus, the legitimacy, of our
> adversarial process.

and

> The Constitutional rights of a criminal defendant are guarenteed
> to the innocent and guilty alike.

and further made clear that

> The Constitutional guarantee of counsel cannot be satisfied by
> mere formal appointment; an accused is entitled to be assisted
> by an attorney, whether retained or appointed who plays the role
> necessary to ensure that the trial is fair. In other words, the
> right to counsel is the right to effective counsel. **ID @ pp. 306- 307.**

In **US v. Cronic**, 466 US 648 (1984), the high Court ruled that:

> The Sixth Amendment requires not merely the provision of counsel,
> but assistance which is be for his defense, and thus, the core
> purpose of counsel guaranty is to assure assistance at trial when
> the accused is confronted with both the intricacies of the law
> and the advocacy of the Prosecutor. If no actual assistance for
> the accused's defense is provided, then the Constitutional guaranty
> has been violated.

Turning back to the wire-tap issue, the District Court as noted above
relied heavily upon the guilt of the Movant. Such wire-taps "below listed"
violated Movant's right to a public trial display within the principle meaning
of his Sixth Amendment right to a fundamentally fair trial process. Hence,
the Government's counsel suborned perjury and it's chief witness submitted

-12-

false affidavits and, more than likely, was called to the Grand Jury and lied to it. Whether or not that happened is of no consequence because the affidavit submitted by Detective LaMorte was false.

CLAIM II.

The wire-tap affidavit was false and misleading and Government's counsel knew, or should have known, that Detective LaMorte was lying about the number of phone calls made to Curatola's cell phone on June 29, 2010 and July 2, 2010. In particular, Detective LaMorte filed an affidavit in the State of New York, County of Nassau, which stated that:

> "72. In further support thereof, my review of call data supplied by Sprint regarding the Curatola cell phone IC disclosed that between June 29, 2010 and July 2, 2010, about one hundred ninety (190) calls were placed between the Curatola cell phone IC and telephone number (631)873-7307. As detailed above, this number is used by Eric Prmemer." See Ex. E. Wire-tap Tr. @ p. 44, #72.

The complaint recently filed and located at Ex. A. reveals that only six (6) calls were made to that number as shown on the Sprint records. See Ex. A. (Calls circled by Movant).

Assistant District Attorney (ADA) Joseph Dopkowski, of Nassau County was appointed special prosecutor of this case by the Federal Government to bring this case before a Federal Grand Jury.

DEA Agent William Steers was called in by the State of New York once they learned about Curatola's criminal history. See Ex. E. @ p. 17, # 26. This report states that this agent worked closely with Detective LaMorte in bringing about this case. ADA Dompkowski stated that:

> "... as set forth in the affidavit of Detective Angelo Lamorte, of the Nassau County Police Department, which I have read and which is incorporated in and made a part of this affidavit. an ongoing investigation being conducted by the Nassau County District Attorney's office and the Nassau County Police Department has revealed probable cause that . . ." Infra

-13-

Further, ADA Kathleen M. Rice stated that:

> "I am familiar with the facts contained in the affidavits of ADA
> Joseph Dompkowski and Detective Angelo LaMorte of the Nassau County
> Police Department, which are annexed hereto and made a part of.
> Based on the facts set forth in these affidavits, there is probable
> cause to believe that . . ." See Ex. A, para. 4, recently filed.

These prosecutors were well aware of the false allegations being made by

Detective LaMorte in his affidavit. The affidavit was used to get the wire-

tap warrants and the wire-taps were used in the Federal Grand Jury to obtain

an indictment. See Ex. A.

It is clear Detective LaMorte lied in his affidavit and the prosecutor

and Special Prosecutor who obtained the federal indictment knew LaMorte lied.

This is critical because if LaMorte lied, what is to say he did not lie about

Movant's wire-tapped calls to his prepaid phone? Regardless, justice in

this matter is impugned because of how the federal indictment was obtained

through the "gateway of fraud" upon the Court.

In Demjanjuk v. Petrovsky, 10 F.3d 338 (6th Cir, 1993) the Sixth Circuit

Court of Appeals stated that "fraud on the court is a willful and intentional

reckless disregard for the truth". The Court went on to state:

> Cases dealing with fraud upon the court often turn on whether
> improper actions are those of a party alone or if attorneys in
> the case are involved. As an officer of the Court, every attorney
> has a duty to be completely honest in conducting litigation."

The Court further held:

> "No court system can function without safeguards against actions
> that interfere with its administration of justice. This concern
> must be balanced against necessity for finality of the Court's
> judgments; thus, only actions that actually subvert the judicial
> process can be the basis for upsetting otherwise settled decrees."

Lastly they stated:

> "While an attorney should represent his client with singular loyalty,
> that loyalty obviously does not demand that he act dishonestly
> or fraudulently; on the contrary his honesty to the Court, as an
> officer thereof, demands integrity and honest dealing with the
> Court. And when he departs from that standard in the conduct of
> a case he perpetuates a fraud upon the Court".

-14-

The Grand Jury and Indictment process in this case was tainted by a fraud upon the Court. The affidavits of Detective LaMorte contained false information. The government's counsel and the Special Prosecutor for this case knew, or should have known, that the affidavit was false and misleading but prosecuted this case regardless. These allegations must be investigated thoroughly.

In **Berger v. US, 79 L.ED 1314 (1935)**, the US Supreme Court held that:

> "The US Attorney is the representative not of an ordinary party to controversy, but of a sovereignty whose obligation is to govern all; and whose interest, therefore, in a criminal prosecution is not whether it shall win the case, but that justice shall be done. As such, he is in a peculiar and definite sense the servant of the law, the two-fold aim of which is that guilt hall not escape or innocence suffer. He may prosecute with earnestness and vigor, indeed he shall do so. But while he may strike hard blows, he is not permitted to strike foul ones. It is a much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one".

At the sentencing in this case, the District Court made the following references to the alleged wire-taps recorded:

> "The thing that concerns me and devastates some of the representations the Defendant makes in terms of his bad choices is that the Defendant, in tapes the Government has, wire-taps, if you will, the Defendant cultured Mr. Curatola on how to beat probation. And that is astounding to me". **See Ex. C @ p. 14.**

The Court further stated:

> "You made a lot of phone calls, a lot of representations, and you were in the thick of things, if you will. Explain to me why you think this does not warrent the recommended sentence of the probation department". **ID @ p. 23.**

If Movant would have had all the documents showing fraud upon the Court by Detective LaMorte, there would not have been a plea in this case. A suppression hearing would have, ultimately, voided the indictment because that indictment was obtained through the use of the fraudulent affidavit and, thus, falls under the doctrine of "fruit of the poisonous tree".

-15-

An evidentiary hearing will be needed to resolve this matter and give Movant an opportunity to fully develop his claim. **See Townsend v. Sain,** 373 US 293 (1963).

Whatever the case may be, the wire-taps were used as a chief factor for the imposition of Movant's sentence under 18 USC §3553 and had a prejudicial effect on the sentence imposed. This cannot be refuted.

## CLAIM III.

Defendants are entitled to their Brady or Jenks Act materials, commonly referred to as §3500 materials, pursuant to a discovery request under Fed. R. Crim. P. Rule 16. **See 18 USC §3500, Jenks v. US, 353 US 657 (1957)** and Brady v. Maryland, 373 US 83 (1963), (validity and construction of Jenks act (Supra) and Defendant's right to production of documents and reports af government witnesses.)

It is unclear why the Government's counsel, or Movant's counsel, withheld this critical report attached to this §2255 Application for Writ of Habeas Corpus. This document was turned over by a person privy to this case and who is willing to submit affidavits and testify as to how they obtained this report. But it is clear from Claim II that the Government's counsel was **aware of this** report but sought a federal indictment with it anyway.

If Movant had known about the factual untruths submitted in the wire-tap affidavits, he would have pursued a Suppression hearing and/or other dispositive pre-trial motions including, but not limited to requesting a dismissal of the Indictment based on the dubious veracity of the affidavits used to obtain the warrants for the wire-taps.

Thus, but for Defendant's counsel's failure to fully investigate these allegations and his failure to inform Movant about this information, Movant would have persisted in going to trial rather than plead guilty. **See**

-16-

Strickland (Supra) and Cronic, (Supra).

A.   Request for an Evidentiary Hearing:

Movant requests an Evidentiary Hearing pursuant to the Federal Rules of Habeas Practice and Procedure Rule 8 to allow him to fully develop these claims. Townsend, (Supra).

He further prays this court will adhere to to 28 USC §2074(b) of the Rules enabling act which states:

> Any such rule creating, abolishing or modifying an evidentiary privilege shall have no force or effect unless approved by an Act of Congress.

Thus, an Evidentiary Hearing must commence on Movant's prima facie claims so he can be afforded the opportunity to be heard at a meaningful time, in a meaningful way.  See Matthews v. Eldridge, 47 L.ED.2d 18 (1976).

B.   Request for Appointment of Magistrate Judge for "Independent" Review of Movant's Claims Under 28 USC §636 et seq.:

Movant makes a formal request that a Magistrate Judge be appointed pursuant to 28 USC §636 so an independent review and judicial assessment can be made on Movant's habeas claims.  See US v. Green, 2012 US Dist. LEXIS 56196, holding that "[b]ecause the motion is a collateral attack on the judgment in this criminal case, it has been referred to the [ ] US Magistrate Judges under the Court's General order of Assignment and Reference".

Movant requests an independent review of his claims based on how the case was resolved so he may receive just resolve for his pellucid habeas claims.

C.   Request to Expand the Record to Include Ex. E, Detective LaMorte's State Affidavit pursuant to FRHCPP Rule 7:

Pursuant to Rule 7 of the FRHCCP, Movant requests the Record be expanded to include Ex. E attached to this §2255 Application.  Rule 7 states in part:

-17-

> (a) **In General:** If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition.

and

> (b) **Types of materials:** The materials that may be required include letters, documents, exhibits, and answers under oath to written interrogatories propounded by the judge. Affidavits may also be submitted and considered as part of the record.

Ex. E is the State Wire-tap averment that was submitted by the state's officer, Detective LaMorte, used to obtain the warrant for wire-tapping Movant and his co-defendants. Such a document must be included in the record so Movant can support the claims he makes in this §2255 Application.

## D. Request for Court to Consider All Other Exhibits as Documentary Evidence Under 28 USC §2247:

Movant requests his other exhibits attached hereto be accepted as documentary evidence under 28 USC §2247. The exhibits are taken from documents handed over from former counsel in this matter and presumed by Movant that such documents are derived from records already stored in the records of the Clerk of Courts pursuant to 28 USC §753 et seq.

### E. Request For an Order to Show Cause:

Movant makes a request for an order to Show Cause pursuant to 28 USC §2243. **See also 28 USC §2248, Return or Answer, FRHCCP Rule 5, Answer and the Reply, and Fed. R. Civ. P. Rule 81(a)(4)(A)(B), Special Writs. Movant** prays any and all Show Cause orders be issued according to the time limits prescribed in the above cited statutes and rules.

### F. Request for Appointment of Counsel Pursuant to 18 USC §3006A(a)(2)(B) and 28 USC §1915(e)(1):

Title 18 USC §3006A(2)(B) provides, in pertinent part:

> (2) Whenever the US Magistrate judge or the Court determines that the interest of justice so requires, representation may be provided for any financially eligible person who –

(B) is seeking relief under section 2241, 2254, or 2255 of Title 28.

Movant is still financially unable to afford counsel. He requests the Court use §1915(e)(1) of Title 28 which states:

(e)(1): The Court may request an attorney to represent any person unable to afford counsel.

This matter will require extensive Habeas Corpus litigation, discovery, and expansion of the record. Your writ writer will be unable to provide these services. Counsel will be needed to work directly with the Court to obtain the documents needed to support Movant's claims.

### G. Affidavit of Movant Brian Sullivan:

Movant submits this affidavit pursuant to 28 USC §2246, and 28 USC §1746, under the pains and penalties of perjury, stating all facts are true to the best of his knowledge, memory, and recollection of what §2255 represents. This §2255 Memorandum of Law does not, however, contain the totality of facts that will be discussed with a Habeas Corpus attorney and submitted at a later evidentiary hearing in this matter. He has simply stated his grounds for relief under the foregoing three claims and needs effective counsel to guide him through the remainder of this process.

By signing this document and Application, he makes this affirmation under the pains and penalties of perjury.

## C O N C L U S I O N

**WHEREFORE** the above mentioned reasons, Movant Brian Sullivan prays this Court will grant him the relief he seeks and any and all other such relief it shall deem necessary to remedy this matter. He further prays this Court will review his §2255 Application and Memorandum of Law in Support thereof under the functional analysis of **Haines v. Kerner, 30 L.ED.2d 652 (1972).**

Respectfully submitted,

*Brian Sullivan*

Dated: March 10th, 2014

Brian Sullivan
Reg. No. 60196-053
Federal Correctional Institute
PO Box 2000
Fort Dix, NJ   08640

## Certificate of Service

I, Movant Brian Sullivan, do hereby certify that the foregoing was served on the United States Attorney for the Government on this 10th day of March, 2014 by being placed in the Unit Team Legal Mail process at FCI-Fort Dix, having the appropriate First Class postage affixed, to be mailed through the United States Postal mailing service.

*Brian Sullivan*
Brian Sullivan
Reg. No. 60196-053
FCI-Fort Dix
PO Box 2000
Fort Dix, NJ   08640

-20-

# A P P E N D I X

**Ex. LIST:**

| | |
|---|---|
| **A.** | Complaint Recently filed |
| **B.** | **Plea Colloquy Transcripts** |
| **C.** | Sentencing Transcripts |
| **D.** | Plea Agreement. |
| **E.** | Affidavit of Detective LaMorte. |
| **F.** | **Declarartion of Attorney John F. Carman** |