<u>E X H I B I T S</u>

"E"

to Joe Coniglio, 860 Broadway Avenue, Holbrook, New York.

---------------------------------------------------------------------------------X

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF NASSAU     )

ANGELO LaMORTE, being duly sworn deposes and says:

1.    I am a Detective with the Nassau County Police Department (hereinafter, "NCPD")
assigned to the District Attorney's Squad (hereinafter, "DAS"). I have been a member of the NCPD
for over eighteen (18) years, and have been a detective for approximately ten (10) years. I am
working on this investigation with my partner, Detective Carlos Rojas of the DAS.  Prior to his
becoming a member of the NCPD, Detective Rojas was a member of the New York City Police
Department for six and a half (6 ½) years.  During that period, he was a member of a Major Case
Team for Narcotics Enforcement in the Borough of Queens, where he investigated the Columbian
and Dominican Drug Cartels.  During this time, he served as the monitor for wiretaps in which
conversations pertaining to the crimes of the sale and/or possession of controlled substances and
marihuana were intercepted, was the affiant for search warrants relating to the seizure of narcotics,
and took part in approximately one thousand (1,000) drug related arrests. Detective Rojas has been a
member of the Nassau County Police Department for seventeen (17) years, and during that time he
spent several years working in a plain clothes unit that specialized in drug enforcement.  As a result
of his background, he is well-versed in narcotics and marihuana investigations, as well as the
vernacular used by individuals who sell narcotics and marihuana. Detective Rojas has reviewed this
affidavit, and shares the opinions I have stated herein about my interpretations of conversations and
communications concerning marihuana and controlled substances.

2

2.     An on-going joint investigation being conducted by the District Attorney of Nassau County (hereinafter, "NCDA") the NCPD, and the Drug Enforcement Administration (hereinafter, the "DEA"), has revealed probable cause to believe that Dominick Curatola,  Dominic Valente, Scott Jacobson, Steven Martin, a person known only as "Mitch," a person believed to be Jerome Scelza, a person believed to be Stephen Gallagher, Christopher Colombo, Sabastian D'Amico, a person known only as "Pat,"  a person believed to be Kerry Iasperra, Brian Savo, Michael Decresenzo, Joseph Campo, Eric Priemer, their agents, co-conspirators and others yet unknown, have committed and will commit the crimes of Criminal Sale of Marihuana in the First Degree, in violation of Section 221.55 of the Penal Law, Criminal Possession of Marihuana in the First Degree, in violation of Section 221.30 of the Penal Law, and Conspiracy to commit those crimes, in violation of Article 105 of the Penal Law, and that communications involving those persons and pertaining to those crimes have taken place and will continue to take place over the wireless telephone currently assigned Personal Telephone Number ("PTN") (631) 334-4123 and Electronic Serial Number ("ESN"), 268435458807841383,  listed to Joe Coniglio, 860 Broadway Avenue, Holbrook, New York, (hereinafter, the "Curatola Cell Phone IV"),   over the wireless telephone currently assigned Mobile Identification Number ("MIN") (203) 444-9141 and International Mobile Subscriber Identifier ("IMSI") 310410328196730, listed to Jianine Martin, 18 Patrick Lane, Branford, Connecticut, (hereinafter, the "Martin Cell Phone I"), and over the wireless telephone currently assigned Personal Telephone Number ("PTN") (203) 627-8556 and International Mobile Subscriber Identifier ("IMSI") 316010156127168, listed to Dan Anthony, PO Box 54988, Irvine, California, (hereinafter, the "Martin Cell Phone II," all the telephones being collectively referred to as the "SUBJECT TELEPHONES").

3.      Moreover, there is probable cause to believe that Dominick Curatola, Joseph Campo, Steven Martin, a person believed to be Evan Sussman, a person believed to be Stephen Gallagher, a person known only as "Pat," a person believed to be Lauren Weber,  their agents, co-conspirators and others yet unknown, have committed and will commit the crimes of Criminal Sale and Possession of a Controlled Substance, in violation of Article 220 of the Penal Law, and Conspiracy to commit those crimes, in violation of Article 105 of the Penal Law.   There is probable cause to believe that communications involving those persons and pertaining to those crimes have taken place and will continue to take place over the SUBJECT TELEPHONES.

4.      Consequently, I submit this Affidavit in support of the Application of Kathleen M. Rice, District Attorney of Nassau County, State of New York: 1) for an amendment to, and extension of, the Amended and Extended Eavesdropping Warrant issued on June 11, 2010, by the Honorable Leonard B. Austin, Associate Justice of the Appellate Division, Supreme Court of the State of New York, Second Judicial Department, which Order was amended by Justice Austin on June 17, 2010, to authorize the interception of communications over the SUBJECT TELEPHONES pertaining to the crimes of Criminal Sale and Possession of Marihuana in the First Degree, in violation of Sections 221.55 and 221.30 of the Penal Law, and Conspiracy to commit those crimes, in violation of Article 105 of the Penal Law, for a period of thirty (30) days; 2) for an extension of, and amendment to, that Amended and Extended Eavesdropping Warrant to authorize the interception of communications pertaining to the crimes of Criminal Sale and Possession of a Controlled Substance, in violation of Article 220 of the Penal Law, and Conspiracy to commit those crimes, in violation of Article 105 of the Penal Law over the SUBJECT TELEPHONES, for a period of thirty (30) days as described herein.

4

WIRE-00000450

5.      Unless otherwise indicated, the facts set forth in this Affidavit are based upon my own observations and knowledge, my examination of the investigative reports prepared by members of the NCPD assigned to this investigation, information obtained by the use of court-authorized eavesdropping in this investigation, my review of telephone records, and other materials I will describe herein.

6.      All dates and times referred to herein are approximate.  Furthermore, unless otherwise noted, where statements of other individuals are described, those descriptions are intended to convey the sum and substance of such statements, and are not necessarily exact quotes.  This Affidavit is submitted for the sole purpose of supporting an application for an amendment to, and extension of, the Amended and Extended Eavesdropping Warrant.  Consequently, not every detail or aspect of our ongoing investigation has been noted herein.

## BACKGROUND OF THE INVESTIGATION

7.      PROTECTED MATERIAL

8.      One of my main objectives of this investigation has been to identify, and develop evidence against, Jacobson's superiors in this bookmaking operation.  As a result of the evidence gathered in this investigation, on March 16, 2010, the Honorable Reinaldo E. Rivera, Associate Justice of the Appellate Division, Supreme Court of the State of New York, Second Judicial Department, issued an Eavesdropping Warrant which authorized the NCDA and NCPD to intercept and record the telephonic and electronic communications of Scott Jacobson, Vincent Russolese, a Dominic Valente, their agents, co-conspirators and others yet unknown, taking place over the Jacobson Cell Phone, as those communications related to the crimes of Promoting Gambling in the First and Second Degrees, Possession of Gambling Records in the First and Second Degrees and Conspiracy to commit those crimes, in violation of Articles 225 and 105 of the Penal Law.

5

9. During the course of monitoring conversations for the crimes of illegal bookmaking over the Jacobson Cell Phone, we intercepted conversations in which Scott Jacobson spoke of his attempts to obtain a quantity of marihuana from a person now identified as Dominic Valente. In addition, conversations intercepted over the Jacobson Cell Phone established that Dominic Valente was likely Scott Jacobson's immediate bookmaking superior, and that conversations pertaining to the crimes of Promoting Gambling, Possession of Gambling Records and Conspiracy to commit those crimes would be intercepted over the wireless telephone currently assigned Personal Telephone Number ("PTN") (516) 984-8630 and Electronic Serial Number ("ESN") 07601571376, listed to Stanley Yu, 263 West Old Country Road, Hicksville, New York (hereinafter, the "Valente Cell Phone"). Thus, on March 26, 2010, the Honorable Plummer E. Lott, Associate Justice of the Appellate Division, Supreme Court of the State of New York, Second Judicial Department, issued an Amended Eavesdropping Warrant which: 1) retrospectively amended the Eavesdropping Warrant issued by Justice Rivera, to preserve, pursuant to Criminal Procedure Law Section 700.65(4), evidence of crimes not otherwise sought by that Warrant, namely, conversations pertaining to the crimes of Criminal Sale of Marihuana in the First Degree, in violation of Section 221.55 of the Penal Law, Criminal Possession of Marihuana in the Second Degree, in violation of Section 221.25 of the Penal Law, and Conspiracy to commit those crimes, in violation of Article 105 of the Penal Law, intercepted over the Jacobson Cell Phone; 2) prospectively amended that Eavesdropping Warrant to authorize future interceptions of conversations pertaining to the crimes of Criminal Sale of Marihuana in the First Degree, in violation of Section 221.55 of the Penal Law, and Conspiracy to commit that crime over the Jacobson Cell Phone and over the Valente Cell Phone; 3) prospectively amended that Eavesdropping Warrant to authorize future interceptions of conversations pertaining to the crimes of Promoting Gambling in the First and Second Degrees, Possession of Gambling

6

Records in the First and Second Degrees and Conspiracy to commit those crimes, in violation of Articles 225 and 105 of the Penal Law, over the Valente Cell Phone.

10.    Next, on April 7, 2010, the Honorable William F. Mastro, Associate Justice of the Appellate Division, Supreme Court of the State of New York, Second Judicial Department, issued an Amended Eavesdropping Warrant which amended the Eavesdropping Warrant issued by Justice Rivera to preserve, pursuant to Criminal Procedure Law Section 700.65(4), evidence of crimes not otherwise sought by that Warrant, namely, conversations pertaining to the crimes of Criminal Sale of Marihuana in the Second Degree, in violation of Section 221.50 of the Penal Law, Criminal Possession of Marihuana in the First, Second and Fourth Degrees, in violation of Sections 221.30, 221.25 and 221.15 of the Penal Law, and Conspiracy to commit those crimes, in violation of Article 105 of the Penal Law, intercepted over the Jacobson Cell Phone and the Valente Cell Phone.

11.    On April 15, 2010, the Honorable Joseph Covello, Associate Justice of the Appellate Division, Supreme Court of the State of New York, Second Judicial Department, issued an Amended and Extended Eavesdropping Warrant which amended and extended the Eavesdropping Warrant issued by Justice Rivera to authorize the interception of conversations and communications over the Jacobson Cell Phone, over the Valente Cell Phone, and over the wireless telephone currently assigned Personal Telephone Number ("PTN") (516) 967-2513 and Electronic Serial Number ("ESN") 07602548882, listed to Stanley Yu, 263 West Old Country Road, Hicksville, New York (hereinafter the "Curatola Cell Phone"), for a period of thirty (30) days.

12.    On April 29, 2010, the Honorable Leonard B. Austin, Associate Justice of the Appellate Division, Supreme Court of the State of New York, Second Judicial Department, issued an Amended Eavesdropping Warrant which amended the Amended and Extended Eavesdropping Warrant issued by Justice Covello by: a) preserving evidence of crimes not otherwise sought by that

7

Warrant, namely, conversations and communications pertaining to the crimes of Criminal Sale of Marihuana in the Second Degree, in violation of Section 221.50 of the Penal Law, Criminal Possession of Marihuana in the Second Degree, in violation of Section 221.25 of the Penal Law, Criminal Possession of Marihuana in the Third Degree, in violation of Section 221.20 of the Penal Law, and Conspiracy to commit those crimes, in violation of Article 105 of the Penal Law, intercepted over the Curatola Cell Phone ; b) preserving additional evidence of crimes not otherwise sought by that Warrant, namely, conversations and communications pertaining to the crimes of Criminal Sale and Possession of a Controlled Substance, in violation of Article 220 of the Penal Law, and Conspiracy to commit those crimes, in violation of Article 105 of the Penal Law, intercepted over the Curatola Cell Phone ; and c) authorizing the interception of future conversations and communications pertaining to the crimes of Criminal Sale and Possession of a Controlled Substance, and Conspiracy to commit those crimes, over the Curatola Cell Phone.

13.     On May 6, 2010, Justice Austin issued an Amended Eavesdropping Warrant which amended the Amended and Extended Eavesdropping Warrant issued by Justice Covello by: 1) preserving, pursuant to Criminal Procedure Law Section 700.65(4), evidence of crimes not otherwise sought by that Warrant, namely, conversations and communications pertaining to the crimes of Criminal Possession of Marihuana in the Second Degree, in violation of Section 221.25 of the Penal Law, and Conspiracy to commit that crime, in violation of Article 105 of the Penal Law, intercepted over the Curatola Cell Phone; PROTECTED MATERIAL

14.     On May 14, 2010, Justice Covello issued an Amended and Extended Eavesdropping Warrant which extended and amended the Amended and Extended Eavesdropping Warrant issued on April 15, 2010, by: 1) authorizing the interception of communications over the Jacobson Cell Phone, the Valente Cell Phone, and the Curatola Cell Phone pertaining to the crimes of Promoting

8

Gambling in the First and Second Degrees, Possession of Gambling Records in the First and Second Degrees, and Conspiracy to commit those crimes, in violation of Articles 225 and 105 of the Penal Law, for an additional period of thirty (30) days; 2) PROTECTED MATERIAL; 3) extending and amending that Amended and Extended Eavesdropping Warrant to authorize the interceptions of communications pertaining to the crimes of Criminal Sale and Possession of Marihuana in the First Degree, in violation of Sections 221.55 and 221.30 of the Penal Law, and Conspiracy to commit those crimes, in violation of Article 105 of the Penal Law, over the Jacobson Cell Phone, the Valente Cell Phone, the Curatola Cell Phone, the Martin Cell Phones I and II, over the wireless telephone assigned Mobile Identification Number ("MIN") (845) 325-1656 and Electronic Serial Number ("ESN") A0000015786EA3, listed to Christopher Murphy, 203 Genung Street, Apartment 802, Middletown, New York, (hereinafter, the "1656 Phone"), over the wireless telephone currently assigned Mobile Identification Number ("MIN") (917) 370-5087 and International Mobile Subscriber Identifier ("IMSI") 310410286817132, listed to Jose Martinez, 643 Jefferson Avenue, Apartment #4, Miami Beach, Florida, (hereinafter, the "Sussman Cell Phone"), and over the wireless telephone currently assigned Mobile Identification Number ("MIN") (347) 585-5140 and Electronic Serial Number ("ESN"), A0-00001E-088587, listed to Bob Simpson, 1434 Colden Street, Flushing, New York (hereinafter, "the Curatola Cell Phone II"), for a period of thirty (30) days; 4) extending and amending that Amended and Extended Eavesdropping Warrant to authorize the interception of communications pertaining to the crimes of Criminal Sale and Possession of a Controlled Substance, in violation of Article 220 of the Penal Law, and Conspiracy to commit those crimes, in violation of Article 105 of the Penal Law over the Curatola Cell Phone and the Curatola Cell Phone II, over the Martin Cell Phones I and II , and over the Sussman Cell Phone.

9

WIRE-00000455

15.     On May 21, 2010, the Honorable Peter B. Skelos, Associate Justice of the Appellate Division, Supreme Court of the State of New York, Second Judicial Department, issued an Amended Eavesdropping Warrant which amended the Amended and Extended Eavesdropping Warrant issued by Justice Covello on May 14, 2010, by providing the correct IMSI number to the Martin Cell Phone I.

16.     On June 11, 2010, Justice Austin issued an Amended and Extended Eavesdropping Warrant which amended and extended the Amended and Extended Eavesdropping Warrant issued on May 14, 2010, by authorizing the continued interception of communications over the Curatola Cell Phone and the Martin Cell Phones I and II pertaining to the crimes of Criminal Sale and Possession of Marihuana in the First Degree, in violation of Sections 221.55 and 221.30 of the Penal Law, Criminal Sale and Possession of a Controlled Substance, in violation of Article 220 of the Penal Law, and Conspiracy to commit those crimes, in violation of Article 105 of the Penal Law, for a period of thirty (30) days, that is, until July 10, 2010.

17.     On June 17, 2010, Justice Austin issued an Amended Eavesdropping Warrant which authorized the interception of communications taking place over the wireless telephone currently assigned Mobile Identification Number ("MIN") (347) 585-5144 and Electronic Serial Number ("ESN"), A0-00001E-0882BF, listed to John DeRosa, 1466 Colden Street, Flushing, New York (hereinafter, the "Curatola Cell Phone III"). For the purpose of the instant Application, I incorporate herein by reference Justice Rivera's March 16, 2010 Eavesdropping Warrant, Justice Lott's March 26, 2010 Amended Eavesdropping Warrant, Justice Mastro's April 7, 2010 Amended Eavesdropping Warrant, Justice Covello's April 15, 2010 Amended and Extended Eavesdropping Warrant, Justice Austin's April 29, and May 6, 2010 Amended Eavesdropping Warrants, Justice Covello's May 14, 2010 Amended and Extended Eavesdropping Warrant, Justice Skelos' May 21,

10

2010 Amended Eavesdropping Warrant, Justice Austin's June 11, 2010 Amended and Extended Eavesdropping Warrant, and Justice Austin's June 17, 2010 Amended Eavesdropping Warrant, and all the applications submitted in support of their issuance as if they were fully set forth herein.

**COMMUNICATIONS PERTAINING TO THE CRIMES OF CRIMINAL SALE AND POSSESSION OF MARIHUANA IN THE FIRST DEGREE, CRIMINAL SALE AND POSSESSION OF CONTROLLED SUBSTANCES, AND CONSPIRACY TO COMMIT THOSE CRIMES.**

18.     As I have described throughout my incorporated affidavits, our investigation has established probable cause to believe that Dominick Curatola is a distributor of marihuana. I also described in those incorporated affidavits his involvement in the possession and sale of controlled substances. The conversations and communications intercepted within the past thirty (30) days have allowed us to continue to identify, and gather evidence against many of the persons involved with him in committing those crimes. The evidence has established probable cause to believe that conversations and communications concerning the crimes of Criminal Sale and Possession of Marihuana in the First Degrees, Criminal Sale and Possession of Controlled Substances and Conspiracy to commit those crimes have taken place, and likely will continue to take place over the SUBJECT TELEPHONES.

a) The Curatola Cell Phone III.

19.     Since we began intercepting communications over the Valente Cell Phone pursuant to Justice Lott's March 26, 2010 Amended and Extended Eavesdropping Warrant, we obtained evidence that Curatola used the Curatola Cell Phone to regularly have conversations and communications pertaining to the possession and sale of marihuana and controlled substances. In my Affidavit made in support of Justice Austin's June 11, 2010 Amended and Extended Eavesdropping Warrant, I detailed the conversations and communications which we intercepted on

WIRE-00000457

the Curatola Cell Phone pertaining to those crimes during the time period of May 14, 2010 through June 10, 2010. We continued to intercept conversations and communications over the Curatola Cell Phone during the evening of June 10, 2010. For instance, at approximately 8:39 p.m., on June 10, 2010, we intercepted this outgoing text message from the Curatola Cell Phone to a telephone used by a person involved in marihuana distribution with Curatola known only as "Mitch," telephone (786) 972-7856, "Got super jack comin soon its def nice." The term "super jack," refers to a higher grade quality of marihuana. During the time periods of authorized interceptions pursuant to orders of this Court, we intercepted many conversations and text messages each day over the Curatola Cell Phone pertaining to the sale and possession of marihuana and controlled substances.

20.     However, the next day, June 11, 2010, there were suddenly no text messages coming into, or going out from, the Curatola Cell Phone. A few telephone calls came into the phone during that time. Those calls went unanswered, or were sent to voice mail. I called the Curatola Cell Phone from a secure telephone to determine if the Curatola Cell Phone was still in service, and both of my calls went directly to the phone's voice mail. According to representatives of Sprint, the Curatola Cell Phone is part of an active account that has not been cancelled for any reason, such as lack of payment.

21.     As I described in my Affidavit made in support of Justice Austin's June 17, 2010 Amended and Extended Eavesdropping Warrant, we determined that Dominick Curatola began using the Curatola Cell Phone III to have conversations and communications pertaining to the crimes of the sale and possession of marihuana and controlled substances. For example, on the first day we were able to intercept communications over the Curatola Cell Phone III, June 18, 2010, at approximately 8:08 p.m., we intercepted a conversation over the Curatola Cell Phone III between Curatola and a then unidentified male in which Curatola said that he never "landed the highs," but

12

that he did have the "lows." The unidentified male told Curatola that he had some "super pretty." Curatola asked "what number?" and the unidentified male said that he would, "try to get some good numbers" (meaning, marihuana at a good price). The unidentified male told Curatola that he would bring him a sample to take a look at. This unidentified male said his supplier was a "big shot," and that they should see if they could make a "good connection." Curatola asked if this supplier would be willing to give them product "on the arm," (that is, on credit), and the unidentified male said that he would determine if they liked the quality of this supplier's product. Curatola said that he had grabbed several "lows," (meaning, marihuana which was of a lower quality), and that he hoped the unidentified male could help Curatola get rid of them. Curatola said the price for the "lows" was "twenty-eight fifty," [two thousand eight hundred and fifty dollars ($2,850) for a pound of marihuana]. Curatola said that he would bring the male "two" (meaning two (2) pounds of marihuana) that night because he needed another "two" (2) for another person tomorrow. This is common to what we have seen in Curatola's marihuana business and in the marihuana distribution business generally; a marihuana trafficker will supply persons with marihuana in some instances, and also receive supplies of marihuana from that same individual at other times, depending on the availability of product and prices.

22.     That same evening, on June 17, 2010, at approximately 9:07 p.m., we intercepted another conversation over the Curatola Cell Phone III in which another unidentified male asked if Curatola could do "two for six," meaning, if Curatola would sell the male two (2) pounds of marihuana for a total of six thousand dollars ($6,000). Curatola quoted the male a price of "sixty-one" (six thousand one hundred dollars ($6,100). The caller asked if Curatola could "spot one for a few days." Curatola said he would be able to do that on "Monday." The caller said that he could come up with "31," [three thousand one hundred dollars ($3,100)] he could not come up with full

13

"six (6) right now." They both agreed to speak "tomorrow" to make arrangements. Also on June 17, 2010, we intercepted a series of text messages in which Curatola ordered several pounds of marihuana from a person at telephone (631) 838-3105, (we have yet to receive subscriber information for this telephone). We intercepted this outgoing text message from telephone (631) 838-3105 to the Curatola Cell Phone III at approximately 9:48 p.m. "…my boy had jacks (slang for a grade of marihuana) for 4," [four thousand dollars ($4,000) a pound]. This response was sent from the Curatola Cell Phone III to telephone (631) 838-3105 at approximately 9:51 p.m., "Will he credit 10 if i buy 10 cod," which I would interpret as Curatola expressing an interest in purchasing ten (10) pounds of marihuana for cash if the seller would provide him with ten (10) pounds on credit. At 9:54 p.m., on June 17, 2010, we intercepted this text message which was sent from the Curatola Cell Phone III to telephone (631) 838-3105, "Ill take 5 tomo," meaning, five (5) pounds of marihuana.

23.     On June 19, 2010, at approximately 11:30 a.m., we intercepted an incoming call to the Curatola Cell Phone III from telephone (631) 873-7307. According to the business records of Verizon Wireless, this telephone is listed to a Maureen Priemer, 101 Hillary Street, West Sayville, New York. According to New York State Department of Motor Vehicles Records (hereinafter, "DMV"), a Maureen Priemer, DOB 7/14/42, lives at that address. In this conversation of June 19, 2010, Curatola spoke with the same male he spoke to in the conversation which I described above which took place at 8:08 p.m. on June 18, 2010. In the June 19, 2010 conversation, the at that point unidentified male told Curatola that he needed to see him (Curatola) urgently because he (the unidentified male) had "struck gold." The unidentified male told Curatola that he wanted Curatola to go and look at something with him. Later that day, at approximately 1:32 p.m., we intercepted this incoming text message from telephone (631) 873-7307 to the Curatola Cell Phone III about this proposed business relationship, "I no but next week its only us we are cutting everyone out I got us

14

kid we are gonna be rich promise."

24.     We intercepted additional conversations on Father's Day, Sunday, June 20, 2010

between Dominick Curatola and the at that point unidentified male who had used the (631) 873-7307

telephone listed to Maureen Priemer concerning the potential business relationship between these

two persons. First, at approximately 7:41 p.m., on June 20, 2010, we intercepted an incoming call to

the Curatola Cell Phone III from the male who claimed to Curatola that he had "struck gold," in the

conversation from June 19, 2010 at 11:30 a.m. In the 7:41 p.m., June 20, 2010 conversation, the

unidentified male told Curatola that he had a couple of people who saw an unspecified item and were

pleased at the quality of what they had seen. The unidentified male told Curatola that he wanted him

(Curatola), to come with him to see his "boy," who had "seven different things" for Curatola to look

at. According to this unidentified male, the items he wanted Curatola to examine were, in his

opinion, "super." He also told Curatola that the price for this item was, in his opinion "super good."

However, the unidentified male wanted Curatola to come with him to look at these items

"personally." Curatola was reluctant to look at this item because he said that he had to get "paper" (

money) for this "other guy," and therefore had no funds to purchase any additional material.   The

unidentified male said that he wanted Curatola to come with him to "Nassau" to see this additional

supply because he valued Curatola's expertise. The unidentified male went on to ask Curatola if he

(Curatola) could "move what I have now," and Curatola stated he could not because he had a

sufficient quantity of an unnamed item in his house but that he had no cash.  Curatola said that he

had a guy from "Connecticut" coming to take what he had now, a clear reference to Curatola's

marihuana supplier/purchaser Steven Martin. I will describe below in the section of my affidavit

pertaining to the Martin Cell Phones I and II how Steven Martin obtained a quantity of marihuana

from Dominick Curatola in the days following this June 20, 2010, 7:41p.m.conversation.

15

25.     At approximately 10:06 p.m., on Father's Day, June 20, 2010, we intercepted an incoming call to the Curatola Cell Phone III from telephone (631) 875-3748. According to the business records of Tracfone, this telephone has no subscriber information. In the conversation, Curatola spoke again to the same male who claimed to have "struck gold." In this conversation, Curatola asked the unidentified male about the "little piece you showed me, the Arizona." The unidentified male told Curatola that he could get these items for Curatola, "tomorrow morning." Curatola said his guy would take "one block" now, and another "five blocks" later. Curatola told this male that he had a potential purchaser that wanted "one hundred and twenty (120) cod." According to unidentified male, his supplier received "one to two hundred" (100 to 200) of this unspecified item at a time, and had persons taking "thirty (30) to forty (40) all day long." The unidentified male believed that if he and Curatola only made a hundred on each one they would be able to make "ten grand each" ($10,000). However, the unidentified male told Curatola that the problem was that the supplier of this item will not give out that item on credit. While the unidentified male wanted to get a supply of this product immediately, Curatola was more measured, and suggested getting a little at a time of this item to see how this supplier worked out. The unidentified male vouched for quality of what he has seen with this supplier, and stated, "it's not the BC's (the slang expression for British Colombian marihuana) but it is close." Curatola again insisted that he wanted a sample, and the unidentified male agreed that he would "grab one" to show to Curatola, and would call Curatola when he obtained a sample of the "BC." With the unidentified male's description of "BC," I believe it is reasonable to conclude that the unidentified male was telling Curatola that he had access to a supplier of marihuana would obtained one hundred (100) to two hundred (200) pounds of that item at a time.

26.     We were able to more conclusively identify the person who claimed to have "struck

16

gold," in a conversation intercepted on June 21, 2010, at approximately 2:39 p.m. This was an incoming call to the Curatola Cell Phone III. In the conversation, the unidentified male told Curatola that he had just received a visit from his "PO," meaning, the male's parole or probation officer. In a conversation intercepted over the Curatola Cell Phone III on June 22, 2010, at approximately 7:09 p.m., Curatola received an incoming call from the same individual who "struck gold," and called Curatola from telephone (631) 873-7307, the telephone listed to Maureen Priemer. In this conversation, Curatola called the person he was speaking with "Eric." According to DEA Agent William Steets, who is working closely with me in this investigation, an individual named Eric Priemer was arrested with Curatola and several others in a case prosecuted by the United States Attorney's Office for the Eastern District of New York in 2004. Priemer was ultimately convicted in that case of Conspiracy to Distribute Cocaine, and was sentenced to a term of forty (40) months in prison. According to Special Agent Steets, Priemer is currently on federal probation as a result of his conviction in that case. On June 24, 2010, at approximately 8:45 p.m., Detectives Rivera and Occhino were at 101 Hillary Street, West Sayville, New York, the address for the subscriber of telephone (631) 873-7307. At that time, they saw Curatola and Eric Priemer arrive at that address in Curatola's white Lexus, go into 101 Hillary Street, and after two minutes, come out of the house and get back into Curatola's white Lexus.

27.     Also on June 19, 2010, at 7:06 p.m. and 7:10 p.m., we intercepted two incoming calls to the Curatola Cell Phone III from the 1656 Phone, the telephone used by Curatola's likely marihuana suppliers Christopter Colombo and Colombo's subordinate Sabastian D'Amico. In those conversations, Curatola, D'Amico and Colombo arranged to meet on Monday, June 21, 2010, in the area of "The Grill," located on 77th Street, New York, N.Y. In the conversation of 7:06 p.m., Colombo bragged to Curatola that an article was written about him (Colombo) which was going to

17

appear in a coming edition of the "Daily News." On Wednesday, June 23, 2010, an article did in fact appear in the New York Daily News on the same Christopher Colombo, who, as I described in my incorporated affidavit made in support of Justice Austin's June 11, 2010, Amended and Extended Eavesdropping Warrant, is a member of the Colombo crime family. The article dealt with Christopher Colombo's prior federal conviction for gambling and loansharking and his insistence that Colombo's insistence that he was now committed to leading a law-abiding life. We intercepted several additional conversations over the Curatola Cell Phone III during the authorized period of interception pursuant to Justice Austin's June 17, 2010, Amended Eavesdropping Warrant in which Curatola used the Curatola Cell Phone III to speak to Sabastian D'Amico on the 1656 Phone in order to set up meetings between Curatola, D'Amico and Colombo.

28.     Later on June 19, 2010, at approximately 8:00 p.m., we intercepted an outgoing call from the Curatola Cell Phone III to telephone (631) 960-5401, listed to an Eileen Carey, 169 Irish Lane, Islip Terrace, New York. In this conversation, Curatola told an unidentified male that the price for the "high grade" was going to be "forty-five" [four thousand five hundred dollars ($4,500) for a pound of marihuana]. The unidentified male was disappointed in that he said that he thought Curatola had different types "of the low stuff," (marihuana that was of lower quality). The caller told Curatola that he had better numbers with another supplier, and would get back to Curatola if he was unable to obtain product from his other connection.

29.     At approximately 10:27 a.m., on Father's Day, June 20, 2010, we intercepted this incoming text message to the Curatola Cell Phone from telephone (516) 456-6077, the telephone used by the person identified in incorporated affidavits as Joseph Campo, who is involved with Curatola in the sale an possession of both marihuana and controlled substances, "Can u get dbol" (an anabolic steroid) or any similar pill." This response was sent from the Curatola Cell Phone III to

18

telephone (516) 456-6077 at 10:28 a.m., "yeah." At 10:29 a.m., we intercepted another outgoing text message from telephone (516) 456-6077 to the Curatola Cell Phone III, "Can you get me 2 cycles for the next time we meet up please," "Cycles" is a term which describes the use of steroids. At 11:42 a.m., we intercepted an incoming call to the Curatola Cell Phone III from the (516) 456-6077 telephone used by Joseph Campo. In their conversation, Campo, who referred to Curatola as "Dom," complained that the item previously given to Campo by Curatola was "short 5 grams," (a likely reference to marihuana) and that the quality of the item Curatola gave him was not as good as what was given by Curatola previously. At 9:21 p.m., this text message was sent from the Curatola Cell Phone III to the telephone used by Joseph Campo, "I got u superman," which is a slang expression for steroids. The following day, June 21, 2010, at 12:29 a.m., we intercepted this outgoing text message from the Curatola Cell Phone III to the (516) 456-6077 telephone used by Joseph Campo, Yea im goin to the city @9 (referring to his planned meeting with Colombo at 11 am in Manhattan) i can stop on the way u want me to bring the lows too then u give me the paper (money) after work. We intercepted this text message in response from the (516) 456-6077 telephone used by Joseph Campo at 12:32 a.m., "Ya that's fine as long as its in a vacuum sealed cause ill be driving with it…"

30. We also intercepted a text message to the Curatola Cell Phone III at 12:27 p.m. on June 20, 2010 from telephone (631) 949-4421, the telephone used by the person identified in the incorporated affidavits as one of Curatola's likely marihuana suppliers Nicole Isaacs, "Happy fathers day, can we do this early cuz i might not have a car latr," which was followed by a text message that was sent to the Curatola Cell Phone III at 12:28 p.m. "Do u stil want the lows?" The following day, June 21, 2010, at 8:02 a.m., we intercepted this incoming text message from the (631) 949-4421 telephone used by Nicole Isaacs, "… thy got the highs, thy r jack nd ny diesl (diesel, another slang

WIRE-00000465

expression for a grade of marihuana). At 8:25 a.m., on June 21, 2010, this text message in response was sent from the Curatola Cell Phone III to the (631) 949-4421 telephone used by Nicole Isaacs, "What numbes cause im getín the jack @ 42," [four thousand two hundred dollars ($4,200) a pound of marihuana]. This text message was then sent at 8:29 a.m. on June 21, 2010, from the (631) 949-4421 telephone used by Nicole Isaacs to the Curatola Cell Phone III, "K ill find out wen he gets up…" which suggests  that Nicole Isaacs is not the ultimate marihuana supplier, but rather that it is "he," another person. Communications concerning marihuana between the Curatola Cell Phone III and the (631) 949-4421 telephone used by Nicole Isaacs continued on June 23, 2010, when, at approximately 12:17 p.m., this text message was sent by the (631) 949-4421 telephone used by Nicole Isaacs to the Curatola Cell Phone III, "Do u stil want the 8?," (eight pounds of marihuana), and, within a minute later, the Curatola Cell Phone III responded, "Yes."

31.     Also on June 21, 2010, at approximately 2:41 p.m., we intercepted a conversation between Dominick Curatola and the person identified in prior incorporated affidavits as Evan Sussman. In this June 21, 2010, conversation, Curatola told Sussman that he was planning to come to see Sussman in Miami during the time period of July 10 through July 16, 2010. This is important to the investigation, since, as I described in the incorporated affidavits, Curatola has in the past suggested  that he intended to go to Florida in order to re-establish a connection with a supplier of cocaine.  Later that day, we intercepted another conversation over the Curatola Cell Phone III at 7:23 p.m., between Curatola and Evan Sussman. During this conversation, Curatola wanted to know if "Mitch" could send Curatola something (money) and if so, Curatola would send him ("Mitch") "something" (which I would interpret as marihuana or some type of controlled substance) in return.

32.     On June 22, 2010, at about 9:09 p.m., we intercepted this incoming text message to the Curatola Cell Phone III from telephone (631) 617-4183, listed, according to the records of

20

WIRE-00000466

Verizon Wireless, to a Michael Bradley, "I just wanna finish sanding and painting that room tonight," which was followed by an outgoing text message sent by the Curatola Cell Phone III to telephone (631) 617-4183 at approximately 9:28 a.m., "Goin to home depot tonight but im still short on cash," which, in the context of this case, I would interpret as a coded request for marihuana by the user of telephone (631) 617-4183 and a reply by Curatola that he had no product on hand because he was short of cash at that time. That Curatola and the person at telephone (631) 617-4183 were referring to Curatola's selling marihuana to that person was further confirmed by additional text messages which were intercepted that day. At 4:17 p.m., on June 22, 2010, we intercepted this text message which was sent by telephone (631) 617-4183 to the Curatola Cell Phone III, "BC?" (a question whether Curatola had British Columbian marihuana). A minute later, at 4:18 p.m., we intercepted this responding text message from the Curatola Cell Phone III to telephone (631) 617-4183, "Yes," and then at 4:25 p.m., this text message was sent from the Curatola Cell Phone III to telephone (631) 617-4183, "Jack wants to kno if u want to hang," (meaning, that Curatola also had the quality of marihuana named "Jack" available to sell as well).

33.      On June 22, 2010, at approximately 1:15 p.m., we intercepted a conversation between Curatola and a person who used telephone (631) 603-7574. In this conversation, Curatola agreed to meet with this unidentified male later that afternoon in order to "train." I described in the incorporated affidavits that the user of telephone (631) 603-7574 has frequently spoken to Curatola about obtaining quantities of marihuana using weightlifting terminology. At approximately 3:00 p.m., Detective Rivera of the DAS saw Dominick Curatola meet with a male Detective Rivera identified as Brain Sullivan at 19 Palm Street, Lindenhurst. At that time, both Sullivan and Curatola got into Curatola's white Lexus automobile and drove to 325 53rd Street, Lindenhurst, New York. Both Curatola and Sullivan went into that location at about 3:25 p.m. At about 3:35 p.m., both

21

Curatola and Sullivan came out of 325 53rd Street, Lindenhurst, New York carrying bags.  Curatola was carrying a brown cloth sack over his shoulder and Sullivan was carrying a red and black duffle bag, which, according to Detective Rivera, appeared to be full.  Curatola and Sullivan placed the bags in the trunk of Curatola's car and left the location.  It is reasonable to conclude that Curatola arranged for Sullivan to receive several pounds of marihuana in this June 22, 2010 transaction which Detective Rivera observed in the area of 325 53rd Street, Lindenhurst, New York.

34.    Also on June 22, 2010, at approximately 4:16 p.m., we intercepted another conversation over the Curatola Cell Phone III between Dominick Curatola and the person believed to be Eric Priemer. In this conversation, Priemer told Curatola that the product he (Priemer) currently had was not the "super good one." Priemer told Curatola that the item he currently had was not "AZ," (slang for marihuana grown in Arizona, a higher grade quality of product.) Priemer went on to say that the quality of the item that he expected to get that week was "so beautiful," and that his supplier was getting "eighty eight (88 pounds) of them this week." (presumably, the "AZ." Priemer wanted Curatola to "come up with a plan," (that is, to sell them for Priemer). Curatola told Priemer that he had a customer who would take all of that supply, but that his customer was going to want "a good number." Both planned to speak about the issue in person later that day. Curatola went on to tell Priemer that he just picked up a "bunch" of "Jack," and now he had to "liquify." In other words, Curatola was attempting to get Priemer to sell marihuana for him (Curatola) so that he would be able to buy additional marihuana from Priemer's source. At the end of the conversation, Priemer is heard explaining to a person in the background at his location that "he (presumably referring to Curatola) has Jack." Later that day, we obtained evidence that Curatola also obtained quantities of marihuana which he gave to Priemer.  At approximately 8:53 p.m. on June 22, 2010, we intercepted an incoming call to the Curatola Cell Phone III from telephone (631) 873-7307. In the conversation,

22

Curatola asked the person believed to be Eric Priemer if he wanted "low or a high?," and Priemer responded "high," meaning, higher grade quality of marihuana. That Curatola likely delivered a quantity of high quality marihuana to Priemer was shown in a conversation intercepted less than an hour later, when, at 9:37 p.m., on June 22, 2010, we intercepted a conversation between Curatola and Michael Decresenzo, referred to in the incorporated affidavits as being one of the persons who sells marihuana with Curatola, in which Curatola told Decresenzo that he (Curatola) was around the block from "Eric's house."

35.     On Wednesday, June 23, 2010, at approximately 3:38 p.m., we intercepted an outgoing call from the Curatola Cell Phone III to telephone (514) 654-7181. Area code "514" is assigned to Canadian telephone numbers.  Curatola identified the male he spoke with in this conversation as "Dave." "Dave" referred to Curatola in the conversation as "Dom." Curatola told "Dave" that he had a meeting with a person he (Curatola) identified as "Jerm." "Dave" asked Curatola when he "got out," and Curatola responded that he "got out" about seven months ago, a clear reference to Curatola's previous term of incarceration on his federal drug trafficking conviction. For his part "Dave" said that he was also incarcerated  previously and "got out," on February 12, 2009. Curatola spoke about his jail experience. "Dave" asked Curatola when he could come and see him in "Montreal." Curatola expressed some concerns about crossing the border given his status on probation, but said that "me and Jerm" are trying to put something together." Curatola added that both he and "Jerm" wanted to discuss this business proposition with him (Dave). "Dave" then gave Curatola basic directions to Montreal by car and they both agreed to speak again in the future about this business proposition.  I believe it is likely that in this conversation, Curatola is describing to "Dave" that he (Curatola) and "Jerm" are interested in marihuana trafficking with "Dave" in Montreal. According to Special Agent Steets, an individual named Jeremy Cohen was

23

arrested with Curatola and several others in a prosecution done by the United States Attorney's Office for the Eastern District of New York in 2004. A check with DCJS revealed that in 2006 Jeremy Cohen (dob 09-19-80) was convicted of Robbery Conspiracy and sentenced to sixty months of incarceration. Also, in 2006, Cohen was convicted of Conspiracy to Distribute Cocaine and received a sentence of sixty (60) months. According to Special Agent Steets, who was the case agent in that 2004 investigation, and is highly familiar with that case, Jeremy Cohen's nickname at that time was "Jerm." According to Special Agent Steets, much of the marihuana which is imported into the United States comes from Canada.

36. On June 24, 2010, this incoming text message was intercepted at approximately 8:01 a.m. from telephone (631) 949-4421, the telephone used by the person believed to be Nicole Isaacs, "The lows r suppsd to b in later." This incoming text message was intercepted at approximately 12:27 p.m. from telephone (631) 949-4421, the telephone used by the person believed to be Nicole Isaacs, "He just hit me, he is gona meet me at 2, so I wil hit u as sn as im done." At approximately 1:05 p.m., this text message was sent to telephone (631) 949-4421, "Ill b done @ 4 getting a   root canal."

37. In addition, on June 24, 2010, this incoming text message was intercepted at approximately 10:59 a.m. from telephone (516) 456-6077, the telephone used by the person believed to be Joseph Campo, "Can I leave the envelope in my mailbox." We intercepted this response at 10:59:31 a.m. from the Curatola Cell Phone III to telephone (516) 456-6077, "Yea." This incoming text message was intercepted at approximately 11:06 a.m. from telephone (516) 456-6077, the telephone used by the person believed to be Joseph Campo, "Kk I have 2550 in an envelope in the back and we are even for everything." This incoming text message was intercepted at approximately 11:15 a.m. from telephone (516) 456-6077, the telephone used by the person believed to be Joseph

24

Campo, "K text when u get the money/put the things back there," referring to a delivery by Curatola of an additional supply of marihuana or controlled substance product. We intercepted this response at 11:27 a.m. from the Curatola Cell Phone III to telephone (516) 456-6077, "I have it there on chair," confirming the delivery.

38.     Also on June 24, 2010, at approximately 12:47 p.m., we intercepted an incoming call to the Curatola Cell Phone III from the person believed to be Eric Priemer from telephone (631) 567-9128, which is listed to a William Priemer of the same 101 Hilary Street, West Sayville, New York address. In their conversation, Priemer said that he was calling from his "office." Priemer said that he was "working on it now," and that he should have something, "today," "it looks like it's going." Curatola said that he was going to dinner tonight at "Blackstones" with "a couple of girls." Curatola asked if the "guy Harvey's talking to was Damien." Priemer said that it was not. Priemer said that Damien "got popped with ten p's," meaning, that "Damien" was arrested for possession of ten pounds of marihuana. Curatola said that it was his understanding that "Damien," "had heat at his house also," (meaning, that he had an illegal gun in his house), and Priemer responded that it was a "legitimate shotgun." Priemer said that he had talked to Damien "personally." Curatola was concerned that Damien not "know my business," (in other words, Curatola was concerned that because Damien was connected to Priemer, Curatola himself would have a problem if "Damien" cooperated with authorities). Priemer assured Curatola that he was not doing business with "Damien." Both agree that they had to be careful because they "have too much to lose" (a likely reference to the fact that both Curatola and Priemer are on federal probation, and face significant periods of incarceration if they are arrested again). They both agreed to go out later that evening.

39.     In addition, on June 24, 2010, we intercepted a series of communications between the Curatola Cell Phone III and the person identified in the incorporated affidavits as Jerome Scelza.

25

This incoming text message was intercepted at approximately 3:08 p.m. from telephone (516) 462-0355, the telephone used by the person believed to be Jerome Scelza, "4450 lowest 4850 highest. Hindu kush strawberry cough. Trainwreck." This incoming text message to the Curatola Cell Phone III was intercepted at approximately 4:50 p.m. from telephone (516) 462-0355, the telephone used by the person believed to be Jerome Scelza, "I can do better ill give em to u at 45." This incoming text message was intercepted at approximately 4:51 p.m. from telephone (516) 462-0355, the telephone used by the person believed to be Jerome Scelza, "If u can cash em out. Hell drop his nums. Ima go c them now." This outgoing text message from the Curatola Cell Phone III was intercepted at approximately 4:52 p.m. to telephone (516) 462-0355, "I need a samp to show ill b comin by u soon." This incoming text message was intercepted at approximately 6:49 p.m. from telephone (516) 462-0355, the telephone used by the person believed to be Jerome Scelza, "Super jack 42 trainwreck 44 Canadian kush  49. I have 6 jacks right now. And like 5 trainwrecks." At approximately 7:03 p.m., on June 24, 2010, we intercepted another conversation over the Curatola Cell Phone III between Dominick Curatola and Jerome Scelza in which Curatola said that he had a purchaser coming "from far away Saturday," (a likely reference to Steven Martin who, as I will describe in the section on the Martin Cell Phones I and II, was then planning to pick up an additional supply of marihuana from Curatola on Saturday, June 26, 2010). Scelza agreed to give Curatola a sample of marihuana to determine if he wanted to then re-sell that marihuana. Ultimately, in a conversation intercepted on Sunday, June 27, 2010, at approximately 12:19 p.m., Jerome Scelza agreed to supply Curatola with marihuana, which Curatola then re-sold to Steven Martin.

40.    An outgoing call was intercepted on June 24, 2010, at approximately 3:50 p.m. from the Curatola Cell Phone III to telephone (631) 949-4421, the telephone used by the person believed to be Nicole Isaacs. In this conversation, Curatola told the person believed to be Nicole Isaacs that

WIRE-00000472

he (Curatola), was "waiting for Mike," (Decresenzo, to give him money that Curatola would use to purchase marihuana from Isaacs). The person believed to be Nicole Isaacs responded, "as soon as you get him, ring me…and then I'll be ready to go." Curatola agreed to this. This outgoing text message was then intercepted at approximately 4:36 p.m. to telephone (631) 512-8441, the telephone used by the person believed to be Michael Decresenzo, "Im home come here." This incoming text message was intercepted in response at approximately 4:38 p.m. from telephone (631) 512-8441, "Kk." This incoming text message was intercepted at approximately 5:22 p.m. on June 24, 2010 from telephone (631) 512-8441, "Here." This outgoing text message was intercepted in response at approximately 5:25 p.m. to telephone (631) 512-8441, "Come in." This incoming text message was intercepted at approximately 5:46 p.m. from telephone (631) 512-8441, "She there." (a reference to Nicole Isaacs). This outgoing text message was intercepted at approximately 5:48 p.m. to telephone , (631) 949-4421, the telephone used by the person believed to be Nicole Isaacs, "U almost here." This outgoing text message was intercepted at approximately 6:27 p.m. to telephone,(631) 949-4421, the telephone used by the person believed to be Nicole Isaacs, "U see him yet." (asking if Isaacs had received product from her supplier). This incoming text message was intercepted  in response at approximately 6:29 p.m. from telephone  (631) 949-4421, the telephone used by the person believed to be Nicole Isaacs, "Yea at 2."

     41.    As to Curatola's interest in obtaining a cocaine connection in Florida, on June 26, 2010, at approximately 2:34 p.m., we intercepted an outgoing text message from the Curatola Cell Phone III to telephone (786) 306-4112, which, according to the business records of Metro PCS, is listed to a Michael Nealy, 2223 Madison Street, Apartment #6, Hollywood, Florida, "Happy b day kid ill b down the 9th to the 16 we def gotta get up." The term "get up," means that the individual wants to obtain a supply of marihuana or controlled substances.  Since Curatola has obtained

27

WIRE-00000473

supplies of marihuana on Long Island, and has likely sent quantities of marihuana to the target "Mitch" in Florida, Curatola's request in the text message to "get up," likely refers to his interest in obtaining a supply of controlled substances in the Miami, Florida area.  At 3:03 p.m., on June 26, 2010, we intercepted this response to the Curatola Cell Phone III from telephone (786) 306-4112, "K kool so how's evrything?"

42.    On June 28, 2010, at approximately 11:24 a.m., we intercepted this outgoing text message from the Curatola Cell Phone III to telephone (631) 617-4183, "Hows the paint look now," a reference to product which Curatola delivered previously to the user of this telephone but was exchanged for another type of marihuana.  This text message was sent in response from telephone (631) 617-4183 to the Curatola Cell Phone III at 11:25 a.m., "Dried way better my girl loves the way the room looks now." Also on June 28, 2010, in a conversation intercepted at approximately 11:27 a.m., Curatola spoke with Evan Sussman and reconfirmed his plan to go to Miami, Florida beginning on July 9, 2010.  In a conversation intercepted at 12:41 p.m., on June 28, 2010, Curatola told the person believed to be Eric Priemer that "Sonny Franzese," Capo in the Colombo crime family, who, during this time was  on trial in the United States District Court for the Eastern District of New York, was one of his (Curatola's) "Dad's friends." This may, in part, explain Curatola's marihuana connection with Christopher Colombo.

b) The Martin Cell Phones I and II.

43.    Conversations and communications intercepted over the Martin Cell Phones I and II have established that a person believed to be Steven Martin continues to possess and sell marihuana and has begun to purchase marihuana from Dominick Curatola for re-sale to others.

44.    On June 12, 2010, at about 5:25 p.m., we intercepted a call over the Martin Cell Phone I between Steven Martin and Brian Savo at phone number (203) 996-0010.  During this

WIRE-00000474

conversation, Martin asked Savo if there were any more of those "things." Savo stated that he had a

guy who went "up" to get them. Martin then asked Savo to "grab the ones that smell more," because

people [i.e., likely customers] like those better. Savo stated that he would "go up there tomorrow."

Five minutes later, on June 12, 2010, at about 5:35 p.m., we intercepted a call over the Martin Cell

Phone I between Steven Martin and Kerry Iasparra at phone number (203) 444-7339, wherein the

following transpired:

Martin:        …Yo, I thought I had the half; I don't. I got a whole one (meaning, a pound of
               marihuana).

Iasparra:      A whole one, hmm.

Martin:        Yeah, I forgot.

Iasparra:      You don't want to break it out of that?

Martin:Rather not. I mean, I'll do twenty nine again if you have the cash.

Iasparra:      Yeah, I don't, I'll be waiting on uh cheech, kinda.

Martin:Alright. You have the money for half of it?

Iasparra:      Uh [inaudible].

Martin:What'd you say, eight?

Iasparra:      [Inaudible] I'm not too sure what I got. I'm lucky to have under a G.

Martin:Alright um, alright um, [inaudible] why don't you just take the whole one
               then and then just when you get it, you get it.

Iasparra:      Eh, Alright.

Martin:Uh, you don't want to go to the shop now, do you?

Iasparra:      Uh.

Martin:Do you want me to leave it in the car?

WIRE-00000475