UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
BRIAN SULLIVAN,

                Petitioner,

                        <u>MEMORANDUM AND ORDER</u>
      -against-               14-CV-1777(JS)

UNITED STATES OF AMERICA,

                Respondent.
----------------------------------X
APPEARANCES
For Petitioner:     Brian Sullivan, <u>pro</u> <u>se</u>
                  19 Palm Street
                  Lindenhurst, NY 11757

For Respondent:     Carrie Nicole Capwell, Esq.
                  United States Attorney's Office
                  Eastern District of New York
                  560 Federal Plaza
                  Central Islip, NY 11722

                  Saritha Komatireddy, Esq.
                  United States Attorney's Office
                  Eastern District of New York
                  271 Cadman Plaza East
                  Brooklyn, NY 11201

SEYBERT, District Judge:

      Brian Sullivan ("Petitioner") petitions this Court <u>pro</u> <u>se</u> to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255.  For the following reasons, the instant Petition is DENIED in its entirety.

<u>BACKGROUND</u>

      On July 7, 2012, Petitioner plead guilty in the United States District Court of the Eastern District of New York to a

lesser-included offense of Count One of a Superseding Indictment, charging Conspiracy to Distribute Marijuana in violation of 21 U.S.C. § 846.  (See J., Def.'s Resp. Ex. F, Docket Entry 12-2 at 33-39, at 34.)[1]

Petitioner's plea proceedings took place before the Honorable A. Kathleen Tomlinson, United States Magistrate Judge, during which Petitioner was asked a series of standard plea colloquy questions.  After swearing him in, Judge Tomlinson ensured that Petitioner was competent to enter the guilty plea and that he understood the proceedings.  (See Plea Tr., Def.'s Resp. Ex. C, Docket Entry 12-1 at 21-42, 4:17-6:9.)  Further, Judge Tomlinson explained the rights Petitioner was forfeiting by choosing to enter a guilty plea, stating in pertinent part:

> The Court: If you plead guilty, I will have to ask you questions about what [ ] you did in order to satisfy myself that you are guilty of the charges to which you seek to plead guilty. And you will have to answer my questions and acknowledge your guilt.  Therefore, you will be giving up your right not to incriminate yourself.  Do you understand?
>
> The Defendant: Yes.

(Plea Tr. 6:20-8:21.)  Petitioner confirmed that he entered into a Plea Agreement with the Government and the waiver provisions

---

[1] Page numbers for the Judgment are those generated by the Electronic Case Filing System.

contained in the Plea Agreement were placed on the record.  (Plea

Tr. 8:22-9:8.)  The Government stated:

> The defendant has agreed pursuant to the
> [P]lea [A]greement to not appeal or challenge
> in any way his conviction or sentence as long
> as the sentence imposed by the Court is 33
> months or less.

(Plea Tr. 9:13-9:17.)  Petitioner indicated that he understood the

effect of his appeal waiver.  (Plea Tr. 10:14-10:25.)  Judge

Tomlinson then asked the Government to inform Petitioner of the

elements of the crime he was pleading guilty to and the Government

explained:

> First, on or about and between March 1, 2010
> and November 16, 2010; the second element,
> within the Eastern District of New York; third
> element, that the defendant acted knowingly
> and intentionally; fourth, that he agreed or
> conspired with others; fifth, to distribute
> and to possess with intent to distribute
> marijuana.

(Plea Tr. 11:6-11:12.)  Judge Tomlinson also explained the range

of possible sentences and discussed the upcoming sentencing

process.  (Plea Tr. 12:2-15:9.)  Petitioner confirmed that he was

satisfied with the legal services provided by counsel. (Plea Tr.

15:16-15:18.)    Further,  Judge  Tomlinson  confirmed  that

Petitioner's guilty plea was voluntary and not a product of any

threats or coercion.  (Plea Tr. 15:23-16:12.)  Judge Tomlinson

then turned to the underlying facts of the crime, stating:

The Court: Mr. Sullivan, did you as charged in Count 1 of the superseding indictment on or about and between March 1, 2010 and November 16, 2010, here in the Eastern District of New York, along with others, did you knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance; in this instance, marijuana.

The Defendant: Yes.

The Court: Mr. Sullivan, I am going to need you now please, if you would, to tell me in your own words what you did in connection with the acts that are charged in Count 1 of the superseding indictment.

The Defendant: I had an agreement with others to conspire to distribute marijuana, pretty much specifically in Suffolk County.

The Court: And was that time frame in 2010 when this occurred?

The Defendant: Correct.

The Court: And you entered into this agreement freely with the others involved. Is that correct?

The Defendant: Correct.

The Court: And at the time you entered into this agreement, conspiring to distribute and possess with intent to distribute marijuana, did you know you were breaking the law?

The Defendant: Yes.

(Plea Tr. 16:13-17:14.) Further, Judge Tomlinson instructed the

Government to place an offer of proof on the record, to which the

Government responded:

The evidence in this case includes it was a
wiretap investigation over many months, so it
would include recordings of telephone calls,
as well as text messages that were captured
involving this defendant and his co-defendants
in connection with the distribution of
marijuana. It would also include surveillance
of meetings that took place in connection with
this conspiracy. Also, marijuana was seized
during this investigation and it was tested by
the DEA and confirmed that it was, in fact,
marijuana. That's the large basis of the
evidence.

(Plea Tr. 18:23-19:8.)    Satisfied with the allocution, Judge

Tomlinson stated:

Based upon the information that's been given
to me by the government, as well as by the
defendant Mr. Sullivan and his counsel, I find
that Mr. Sullivan is acting voluntarily, that
he fully understands his rights and the
consequences of his plea and that there is
indeed a factual basis for the plea.
    I, therefore, am recommending to Judge
Seybert, that the plea of guilty here to the
lesser included offense of Count One of the
superseding indictment be accepted.

(Plea Tr. 19:10-19:19.)

Petitioner returned to this Court for his sentencing

proceedings on May 11, 2012. Prior to imposing sentence, the Court

stated that it considered the Plea Agreement, the plea proceeding

before Judge Tomlinson, the presentence investigation report

generated by the Probation Office, as well as letters sent on

Petitioner's behalf. (See Sentencing Tr., Def.'s Resp. Ex. D,

Docket Entry 12-2 at 1-30, 4:20-5:11.) The Court then confirmed

that neither defense counsel, nor the Government, had objections

5

to the contents of the presentence investigation report. (Sentencing Tr. 6:7-6:10.) Following argument from counsel, the Court imposed a sentence of twenty seven (27) months of imprisonment followed by four years of supervised release. (Sentencing Tr. 26:21-26:24.)

Notwithstanding the appeal waiver, Petitioner appealed his conviction and sentence to the Second Circuit Court of Appeals. On August 12, 2013, the Second Circuit affirmed Petitioner's conviction and sentence. (See Mandate United States v. Sullivan, No. 12-2221 (2d Cir. Aug. 12, 2013), Def.'s Ex. E, Docket Entry 12-2 at 31-32.)

On March 17, 2014, Petitioner filed the instant Petition to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255, raising a number of claims, including ineffective assistance of counsel. (See Pet., Docket Entry 1; Pet'r's Br., Docket Entry 2.) On June 2, 2014, John F. Carman, Esq., Petitioner's assigned counsel during the underlying proceedings, filed an affidavit in which he denied Petitioner's allegations regarding his representation. (See Carman Aff., Docket Entry 10, at 1-4.) The Government filed a response on June 30, 2014, arguing that Petitioner's claims are without merit and barred by the appeal waiver. (Resp.'s Br., Docket Entry 12.) Shortly thereafter, Petitioner submitted a reply in further support of the Petition. (Pet'r's Reply Br., Docket Entry 13.) Additionally, Petitioner

filed a motion for summary judgment, arguing that because the Government failed to adequately respond to the grounds for habeas relief, judgment should be issued in his favor (Mot. for Summ. J., Docket Entry 14.)

DISCUSSION

The Court will first address the applicable legal standard before turning to the merits of the Petition.

I. <u>Legal Standard</u>

To warrant habeas corpus relief under § 2255 a petitioner must show "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack". 28 U.S.C. § 2255(a). In other words, a collateral attack is available "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" <u>United States v. Bokun</u>, 73 F.3d 8, 12 (2d Cir. 1995) (quoting <u>Hill v. United States</u>, 368 U.S. 424, 428, 82 S. Ct. 468, 471, 7 L. Ed. 2d 417 (1962)). When determining whether to grant habeas relief, "the scope of review on a § 2255 motion should be 'narrowly limited' in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources."

<u>Graziano v. United States</u>, 83 F.3d 587, 590 (2d Cir. 1996) (citations omitted).  When seeking habeas relief, the petitioner has the burden of proving his claims by a preponderance of the evidence.  <u>Skaftouros v. United States</u>, 667 F.3d 144, 158 (2d Cir. 2011).

Concerning evidentiary hearings, § 2255 states that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."  28 U.S.C. § 2255(b).  However, "[a]iry generalities, conclusory assertions and hearsay statements will not suffice [to warrant an evidentiary hearing] because none of these would be admissible evidence at a hearing."  <u>United States v. Aiello</u>, 814 F.2d 109, 113-14 (2d Cir. 1986).  As such, "[t]he petitioner must set forth specific facts which he is in a position to establish by competent evidence."  <u>LoCascio v. United States</u>, 395 F.3d 51, 57 (2d Cir. 2005) (alteration in original) (internal quotation marks and citations omitted).  Critically, "[i]t is within the district court's discretion to determine whether a hearing is warranted."  <u>Pham v. United States</u>, 317 F.3d 178, 184 (2d Cir. 2003) (citation omitted).

As Petitioner's submissions were filed <u>pro se</u>, the Court will liberally construe them "'to raise the strongest arguments

that they suggest.'" Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). However, this does not excuse Petitioner "'from comply[ing] with relevant rules of procedural and substantive law.'" Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (quoting Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981)).

## II. Applicability of Waiver

It is "well established that a knowing and voluntary waiver of the right to appeal is generally enforceable." United States v. Hernandez, 242 F.3d 110, 113 (2d Cir. 2001); Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001) (finding that waivers of collateral attack under § 2255 are enforceable). However, the Second Circuit has held that there are instances where a petitioner may appeal or collaterally attack a conviction notwithstanding the existence of an appeal waiver, including: "(1) the arbitrary practice of sentencing without proffered reasons which . . . could in some cases amount to an abdication of judicial responsibility subject to mandamus . . .; (2) the defendant's right to appeal on the grounds of ineffective assistance of counsel, . . .; and (3) the arguably unconstitutional consideration of naturalized status." United States v. Rosa, 123 F.3d 94, 98 (2d Cir. 1997) (internal quotation marks and citation omitted). Therefore, "where there is a claim of ineffective assistance of counsel that calls into question the legitimacy of the waiver

itself, the waiver will not foreclose a section 2255 petition."
Riggi v. United States, No. 04-CV-7852, 2007 WL 1933934, at *5
(S.D.N.Y. July 5, 2007).

Pursuant to his plea, Petitioner stipulated that he
would not file an appeal or otherwise challenge his conviction or
sentence in the event the Court sentenced him to a term of
imprisonment of thirty three (33) months or less. (See Plea
Agreement, Pet'r's Br. Ex. D, Docket Entry 2-4, ¶ 4.)
Subsequently, Petitioner was sentenced to a term of imprisonment
of twenty seven (27) months followed by four (4) years of
supervised release, a term within the scope of the appeal waiver.
(Sentencing Tr. 26:21-26:24.)

Following an examination of the underlying record, the
Court finds that Petitioner executed the appeal waiver knowingly
and voluntarily. On the record, the Government explained the
waiver provisions contained in the Plea Agreement and Petitioner
confirmed that he understood the effect of the appeal waiver.
(Plea Tr. 9:9-10:25.) Thus, the Court finds the appeal waiver to
be enforceable. However, to the extent Petitioner is seeking
relief based on ineffective assistance of counsel that calls into
question the validity of the waiver, the Court will proceed to
consider the merits of those claims.

III. Invalid Guilty Plea

        Petitioner claims that his guilty plea was rendered invalid, as there was no factual basis for his plea and his statements during the plea proceedings encroached upon his constitutional right against self-incrimination. Assuming, arguendo, that the appeal waiver does not bar review of these claims, Petitioner's claims regarding his guilty plea are without merit.

    A. Legal Standard

        The well-established standard under which courts review a guilty plea, is whether the plea "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Hill v. Lockhart, 474 U.S. 52, 56, 106 S. Ct. 366, 369, 88 L. Ed. 2d 203 (1985) (quoting North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970)). "A plea is considered 'intelligent' if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way,' and it is considered 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." Manzullo v. People of N.Y., No. 07-CV-0744, 2010 WL 1292302, at *5 (E.D.N.Y. Mar. 29, 2010) (quoting Miller v. Angliker, 848 F.2d 1312, 1320 (2d Cir. 1988)). "Solemn

declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629, 52 L. Ed. 2d 136 (1977). Further, "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Id.

B. Analysis

The Court finds that Petitioner knowingly and voluntarily entered a guilty plea, with knowledge of the rights he was forfeiting by entering the plea, as well as an understanding of the factual basis for the plea. During a thorough allocution, Judge Tomlinson repeatedly confirmed that Petitioner understood the proceedings. During the plea colloquy the following was stated:

> The Court: Mr. Sullivan, are you satisfied with your legal representation up until today?
>
> The Defendant: Yes.
>
> The Court: Now Mr. Sullivan, what is your plea to the lesser included offense of Count 1 in the superseding indictment?
>
> The Defendant: Guilty.
>
> The Court: Are you making the plea of guilty voluntarily and of your own free will?
>
> The Defendant: Yes.
>
> The Court: Has anyone threatened you or forced you to get you to plea guilty?

The Defendant: No.

The Court: Other than the agreement with the government which is the [P]lea [A]greement that we have marked as Court Exhibit 1, and has been stated on the record, other than that agreement, has anyone made any promises that caused you to plead guilty?

The Defendant: No.

The Court: Has anyone made any promise to you as to what you sentence will be?

The Defendant: No.

(Plea Tr. 15:16-16:12.)  The record demonstrates that Petitioner chose to plead guilty knowingly and voluntarily.  Thus, Petitioner's claims regarding the validity of his plea are without merit.

### 1. Factual Basis for Guilty Plea

Petitioner contends that there was an insufficient factual basis for his guilty plea, rendering his guilty plea invalid.  A Court may only accept a guilty plea when there is a factual basis for the plea.  See Fed. R. Crim. P. 11.  This can occur in several ways, including "by the defendant's admission that he has committed each element of the crime charged, by the government or defense counsel's summary of what the evidence against the defendant would show, or by any other factual basis so long as that basis is put on the record."  Marulanda v. United States, No. 05-CV-3406, 2007 WL 1029019, at *2 (E.D.N.Y. Mar. 29, 2007).  Additionally, "'a reading of the indictment to the

defendant coupled with his admission of the acts described in it [is] a sufficient basis for a guilty plea, as long as the charge is uncomplicated, the indictment detailed and specific, and the admission unequivocal.'" Montgomery v. United States, 853 F.2d 83, 85 (2d Cir. 1988) (quoting Godwin v. United States, 687 F.2d 585, 590 (2d Cir. 1982)).

Based on a review of the record, Petitioner's contention that there was an insufficient factual basis for his plea fails. During the plea hearing, the Government outlined the elements of the applicable crime on the record by stating:

> First, on or about and between March 1, 2010 and November 16, 2010; the second element, within the Eastern District of New York; third element, that the defendant acted knowingly and intentionally; fourth, that he agreed or conspired with others; fifth, to distribute and to possess with intent to distribute marijuana.

(Plea Tr. 11:6-11:12.) Petitioner then indicated that he understood each element of the crime. (Plea Tr. 11:17-11:23.) Additionally, Petitioner admitted that he committed all elements of the crime during the following exchange with Judge Tomlinson:

> The Court: Mr. Sullivan, did you as charged in Count 1 of the superseding indictment on or about and between March 1, 2010 and November 16, 2010, here in the Eastern District of New York, along with others, did you knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance; in this instance, marijuana.

The Defendant: Yes.

The Court: Mr. Sullivan, I am going to need you now please, if you would, to tell me in your own words what you did in connection with the acts that are charged in Count 1 of the superseding indictment.

The Defendant: I had an agreement with others to conspire to distribute marijuana, pretty much specifically in Suffolk County.

The Court: And was that time frame in 2010 when this occurred?

The Defendant: Correct.

The Court: And you entered into this agreement freely with the others involved. Is that correct?

The Defendant: Correct.

The Court: And at the time you entered into this agreement, conspiring to distribute and possess with intent to distribute marijuana, did you know you were breaking the law?

The Defendant: Yes.

(Plea Tr. 16:13-17:14.) In addition, the Government summarized

the evidence against Petitioner, stating:

> The evidence in this case includes it was a wiretap investigation over many months, so it would include recordings of telephone calls, as well as text messages that were captured involving this defendant and his co-defendants in connection with the distribution of marijuana. It would also include surveillance of meetings that took place in connection with this conspiracy. Also, marijuana was seized during this investigation and it was tested by the DEA and confirmed that it was, in fact, marijuana. That's the large basis of the evidence.

(Plea Tr. 18:23-19:8.)  In sum, the record belies Petitioner's claim and shows a sufficient basis for the plea.

## 2. Self-Incrimination During Guilty Plea

Construing the Petition liberally, it appears Petitioner is alleging that the Court improperly violated his rights against self-incrimination during the Plea Hearing and Sentencing Hearing. "It is well-settled that a defendant's properly counselled and entered plea of guilty admits all of the elements of a formal criminal charge and waives a multitude of federal constitutional rights, including the privilege against compulsory self-incrimination."  Lloyd v. Walker, 771 F. Supp. 570, 575-76 (E.D.N.Y. 1991) (citing Tollett v. Henderson, 411 U.S. 258, 267, 93 S. Ct. 1602, 1608, 36 L. Ed. 2d 235 (1973)).  In the instant case, while informing Petitioner of the constitutional rights he would forfeit by choosing to plead guilty, Judge Tomlinson explained:

> The Court: If you plead guilty, I will have to ask you questions about what [ ] you did in order to satisfy myself that you are guilty of the charges to which you seek to plead guilty. And you will have to answer my questions and acknowledge your guilt.  Therefore, you will be giving up your right not to incriminate yourself.  Do you understand?
>
> The Defendant: Yes.

(Plea Tr. 8:9-17.)  Nonetheless, Petitioner chose to proceed with his guilty plea.  As set forth above, the entirety of the plea

allocution shows Petitioner's choice to plead guilty was both knowing and voluntary, and as such, Petitioner cannot now claim a violation of his right against self-incrimination. <u>See</u> <u>Isaraphanich v. United States</u>, 632 F. Supp. 1531, 1533 (S.D.N.Y. 1986) (stating that petitioner "is not entitled to the vacating of his conviction on the basis of claimed antecedent constitutional infirmities such as . . . [a] violation of the privilege against self-incrimination . . . . The only proper focus of a federal habeas inquiry in such a situation is the voluntary and intelligent character of the guilty plea") (citations omitted). Further, the Court is not convinced that any statements during the Sentencing Hearing amount to a violation of his right against self-incrimination.

IV. <u>Ineffective Assistance of Counsel</u>

Petitioner alleges that he received ineffective assistance when counsel failed to: (1) fully investigate the case and request a Suppression Hearing; and (2) compel the disclosure of exculpatory information.[2]

_____

[2] As set forth above, the Court finds that Petitioner's guilty plea was knowing, voluntary, and had a sufficient factual basis. Thus, the Court summarily rejects Petitioner's argument that he received ineffective assistance of counsel because he misunderstood his plea. <u>See</u> <u>Rosenfeld v. United States</u>, 972 F. Supp. 137, 143-44 (E.D.N.Y. 1997) (citing <u>United States v. Stevens</u>, 19 F.3d 93, 95-96 (2d Cir. 1994)); <u>see also</u> <u>Fama v. United States</u>, 901 F.2d 1175, 1178 (2d Cir. 1990).

A.  Standard

To prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate that his counsel's performance was so inadequate that he was denied his Sixth Amendment right to counsel.  See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984).  To satisfy the Strickland test, a petitioner must "(1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms,' and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation."  United States v. Cohen, 427 F.3d 164, 167 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 688, 693, 104 S. Ct. at 2052).  Under the first prong of the Strickland test, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. Under the second prong of the Strickland test, a petitioner must establish that he was prejudiced by counsel's erred performance, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

When a petitioner pleads guilty, "[he] must show that the [P]lea [A]greement was not knowing and voluntary, because the

advice he received from counsel was not within acceptable standards." Parisi v. United States, 529 F.3d 134, 138 (2d Cir. 2008) (internal quotations marks and citations omitted). This analysis focuses on the plea agreement process, not on pre-plea occurrences. Id. It is also clear that "[c]laims by petitioners that their pleas were involuntarily made due to the erroneous advice or unrealized promises made by counsel 'afford an all too easy avenue for the invalidating of convictions on pleas of guilty.'" Hernandez v. United States, 839 F. Supp. 140, 143 (E.D.N.Y. 1993) (quoting United States v. Horton, 334 F.2d 153, 154 (2d Cir. 1964)). Therefore, "when considering the voluntariness of a defendant's plea, courts look to the voir dire of the defendant upon each plea to determine whether the plea reflected a knowing, free and rational choice of the alternatives open to the accused." Id. (internal quotation marks and citation omitted).

    B. Analysis

        1. Failure to Fully Investigate or Request a Suppression
           Hearing

        It appears that Petitioner is arguing that his attorney erred by failing to adequately investigate the case, including failing to request a suppression hearing. He contends that without these investigative errors, he would not have entered a guilty plea. Concerning the failure to request a suppression hearing,

Petitioner argues that a suppression motion may have assisted in uncovering falsified evidence.

      "In order to show ineffective assistance for the failure to make a suppression motion, the underlying motion must be shown to be meritorious, and there must be a reasonable probability that the verdict would have been different if the evidence had been suppressed." United States v. Matos, 905 F.2d 30, 32 (2d Cir. 1990). Crucially, "failure to make a suppression motion is not per se ineffective representation, [but] where trial counsel fails to make a motion to suppress because he neglected 'to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary,' then ineffective representation is shown." Matos, 905 F.2d at 33 (quoting Kimmelman v. Morrison, 477 U.S. 365, 384-85, 106 S. Ct. 2574, 2587-88, 91 L. Ed. 2d 305 (1986)). In sum, counsel's "decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691, 104 S. Ct. at 2066. Further, even if a petitioner is able to show that failing to properly investigate was an unreasonable error, it will not guarantee relief if the error had no effect on the judgment. Id.

      In the instant case, Petitioner alleges that a wire-tap affidavit for a co-defendant's phone was obtained using misleading testimony from a member of the New York City Police Department.

(Pet'r's Br., Docket Entry 2, at 13-16.)  Petitioner argues that
if the evidence used to obtain this wire-tap was misleading, "what
is to say [the officer] did not lie about [Petitioner's] wire-
tapped calls."  (Pet'r's Br. at 14.)  Generally, Petitioner
characterizes the case as one "tainted by fraud."  (Pet'r's Br. at
15.)  In contrast, defense counsel characterizes the investigation
of the case as follows: "Petitioner and I painstakingly reviewed
the wiretap affidavits and the transcripts of the tapes that
captured evidence of his complicity in the crime.  The decision
not to file a wire-tap suppression motion, was grounded in its
sheer lack of viability and Petitioner's interest in taking
advantage of a 'global plea' that generated an extra acceptance
point."  (Carman Aff. at 2.)

        The Court rejects Petitioner's claim that he received
ineffective assistance of counsel based on counsel's failure to
move for a suppression hearing.  Petitioner's unsupported
allegations that the evidence against him was likely based on fraud
does not show that his attorney acted improperly.  In contrast,
the Court finds that Petitioner obtained a beneficial disposition
considering the evidence against him.  (Carman Aff. at 2; Plea Tr.
18:23-19:8.)  Petitioner's sweeping allegations of deception do
not show that the strategy of his attorney fell below an
objectively reasonable standard.  Strickland, 466 U.S. at 688, 104
S. Ct. at 2064.

Further, Petitioner makes a general argument that counsel failed to adequately investigate the case. As discussed above, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691, 104 S. Ct. at 2066. However, a reasonable investigation does not "compel defense counsel to investigate comprehensively every lead or possible defense, or to scour the globe on the off-chance something will turn up." Greiner v. Wells, 417 F.3d 305, 321 (2d Cir. 2005) (internal quotation marks and citations omitted). Additionally, "'[A] petitioner alleging that counsel's ineffectiveness was centered on a supposed failure to investigate has the burden of providing the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced.'" Halo v. United States, No. 06-CV-5041, 2007 WL 1299158, at *13 (E.D.N.Y. Apr. 30, 2007) (quoting Simmons v. Gramley, 915 F.2d 1128, 1133 (7th Cir. 1990)). The Court is not persuaded. Petitioner's conclusory allegations that counsel did not fully investigate the matter cannot satisfy the performance prong of the Strickland test.

## 2. Failure to Obtain Exculpatory Material

Petitioner also argues that he received ineffective assistance of counsel because counsel did not compel the disclosure of exculpatory information. The "suppression by the prosecution

22

of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97, 10 L. Ed. 2d 215 (1963). Undisclosed evidence is "material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " Strickler v. Greene, 527 U.S. 263, 280, 119 S. Ct. 1936, 1948, 144 L. Ed. 2d 286 (1999) (quoting United States v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375, 3375, 87 L. Ed. 2d 481 (1985)). Crucially, "[o]bjections to the nature of the evidence obtained by and available to the prosecution will not survive a plea of guilty and are not available on an application for a writ of habeas corpus." U.S. ex. rel. Mendez v. Fish, 259 F. Supp. 146, 148 (S.D.N.Y. 1965) (collecting cases).

Even if this claim could survive a guilty plea, it is nonetheless without merit. Petitioner bases this argument on a "critical report" that he submitted with his Petition that he obtained from "a person privy to this case", which consists only of telephone records. (Pet'r's Br. at 16.) In response to this allegation, defense counsel states that he does not see the value of this report, nor does Petitioner provide one. (Carman Aff. at 3-4.) Critically, Petitioner does not adequately explain how this

document is "material either to guilt or to punishment." <u>Brady</u>, 373 U.S. at 87, 83 S. Ct. at 1196-97. As such, Petitioner cannot demonstrate that he is entitled to habeas relief on this ground.

V. <u>Evidentiary Hearing</u>

As discussed above, when seeking habeas relief, "[t]he granting of a[n] [evidentiary] hearing is within the discretion of the District Court." <u>Thomas v. Arizona</u>, 356 U.S. 390, 403, 78 S. Ct. 885, 892, 2 L. Ed. 2d 863 (1958) (citing <u>Brown v. Allen</u>, 344 U.S. 554, 463-65, 73 S. Ct. 397, 410-11, 97 L. Ed. 469 (1953)). As Petitioner's claims for relief are without merit and the underlying record conclusively shows he is not entitled to relief, an evidentiary hearing could not advance Petitioner's claims. Thus, Petitioner request for an evidentiary hearing is DENIED.

VI. <u>Motion for Counsel</u>

Petitioner moves the Court to appoint counsel. However, "a habeas petitioner has no constitutional right to counsel in his habeas proceeding." <u>Harris v. United States</u>, 367 F.3d 74, 77 (2d Cir. 2004) (citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 752-53, 111 S. Ct. 2546, 2566, 115 L. Ed. 2d 640 (1991)). Ultimately, it is within the Court's discretion whether to appoint counsel during habeas proceedings. <u>See, e.g.</u>, <u>U.S. ex rel. Cadogan v. LaVallee</u>, 502 F.2d 824, 826 (2d Cir. 1974). As the Court finds no merit to Petitioner's claims for relief, Petitioner's motion to appoint counsel is DENIED.

CONCLUSION

For the reasons set forth above, Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 (Docket Entry 1) is DENIED. Further, Petitioner's pending motion for summary judgment (Docket Entry 14) is DENIED AS MOOT.[3] Petitioner's remaining requests are DENIED.[4]

[BOTTOM HALF OF PAGE INTENTIONALLY LEFT BLANK]

---

[3] Insofar as Petitioner is seeking summary judgment based on the same claims in his Petition, the claims have been rejected in this Memorandum and Order.

[4] To the extent Petitioner requests that the matter be heard by a magistrate judge pursuant to 28 U.S.C. § 636, Respondent did not provide explicit consent for a referral. See 28 U.S.C. § 636; Gonzalez v. Rakkas, 846 F. Supp. 229, 231 (E.D.N.Y. 1994). To the extent he requests outstanding discovery and expanding the record to include additional material, "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904, 117 S. Ct. 1793, 1796-97, 138 L. Ed. 2d 97 (1997); see also Drake v. Portuondo, 321 F.3d 338, 346 (2d Cir. 2003).

Because there can be no debate among reasonable jurists that Petitioner was not entitled to habeas relief, the Court does not issue a Certificate of Appealability. 28 U.S.C. § 2253(c); see also Middleton v. Att'ys Gen., 396 F.3d 207, 209 (2d Cir. 2005). The Clerk of the Court is directed to mail a copy of this Memorandum and Order to the pro se Petitioner and mark this matter CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:      February   26  , 2018
            Central Islip, New York